Exhibit 34

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF MICHIGAN

3                   SOUTHERN DIVISION

4

5    DAVONTAE SANFORD,

6              Plaintiff,

7
     -vs-          Case No. 17-CV-13062-DML-RSW
8

9    CITY OF DETROIT, MICHAEL

10   RUSSELL and JAMES TOLBERT,

11             Defendants.

12   _____/

13   DEPONENT:     Barbara Simon

14   DATE:         Tuesday, October 16, 2018

15   TIME:         10:00 a.m.

16   LOCATION:     210 East 3rd Street

17                 Suite 212

18                 Royal Oak, Michigan

19   REPORTER:     Quentina Rochelle Snowden,

20                 Certified Shorthand Reporter-5519

21                 and Notary Public

22

23

24

25



```
 1    APPEARANCES:

 2    Neufeld, Scheck & Brustin, LLP

 3    BY:  AMELIA GREEN

 4    99 Hudson Street

 5    8th Floor

 6    New York, New York 10013

 7    Phone: (212) 965-9084

 8    E-mail:  amelia@nsbcivilrights.com

 9         Appearing on behalf of the Plaintiff.

10

11    Seward Henderson PLLC

12    BY:  MICHAEL THOMAS BERGER

13    210 East 3rd Street

14    Suite 212

15    Royal Oak, Michigan 48067-2638

16    Phone: (248) 733-3580

17    E-mail:  mberger@sph-pllc.com

18         Appearing on behalf of the Defendants.

19

20    ALSO PRESENT:

21    Emma Freudenberger via telephone

22    Len Kamdang via telephone

23

24

25
```



BARBARA J. SIMON
DAVONTAE SANFORD vs CITY OF DETROIT

October 16, 2018
3

```
 1              INDEX PAGE

 2  WITNESS:                          PAGE

 3  Barbara Simon

 4  Examination by Ms. Green           05

 5  Examination by Mr. Berger         193

 6  Re-Examination by Ms. Green       227

 7  Re-Examination by Mr. Berger      311

 8  (No further examination.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                    EXHIBITS

 2    EXHIBIT         DESCRIPTION           MARKED

 3    EX. NO. 52      DPD MANUAL              97

 4    EX. NO. 53      DRAWING                262

 5    EX. NO. 54      DRAWING                265

 6

 7             (EXHIBITS ATTACHED.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



BARBARA J. SIMON
DAVONTAE SANFORD vs CITY OF DETROIT

October 16, 2018
81

1      the DPD?

2  A   Yes, ma'am, when he was in charge of Homicide.

3  Q   Okay.  And before he became your direct supervisor,

4      did you ever work with him in any of your -- when he

5      was in any other role?

6  A   Like I said earlier, I remember him coming out to a

7      homicide that was drug-related, I remember him

8      coming out.

9  Q   And then Mr. Tolbert went on to become the head of

10     Major Crimes after he was the officer in charge of

11     Homicide, correct?

12                  MR. BERGER:  Foundation.

13                  THE WITNESS:  I remember him

14     getting -- yes -- yeah, Major Crime, yes, that's

15     correct.

16 BY MS. GREEN:

17 Q   Did you ever work with him directly when he was in

18     Major Crimes?

19 A   Not, you know, as partners, no, ma'am.  He was in

20     charge of Major Crimes, which was part of Homicide.

21 Q   I take it he was very -- probably very busy in that

22     role as head of Major Crimes, correct?

23                  MR. BERGER:  Foundation.

24                  THE WITNESS:  He was -- yeah, because

25     he had several units under him, yes.



 1 | BY MS. GREEN:

 2 | Q   Was it common for him to participate in

 3 |     interrogations when he was the head of Major Crimes?

 4 |                     MR. BERGER:  Foundation.

 5 |                     THE WITNESS:  I don't recall him

 6 |     being, you know, into any of -- in Major Crimes.  I

 7 |     don't know.  I can only speak for Homicide.

 8 | BY MS. GREEN:

 9 | Q   Right.  Was it common -- was it common for James

10 |     Tolbert to participate in Homicide interrogations

11 |     when he was acting as the head of Major Crimes?

12 | A   No, ma'am.

13 | Q   You had never seen an instance when -- when Tolbert

14 |     inserted himself in an interrogation?

15 | A   That's correct.

16 | Q   Did you ever see -- withdrawn.

17 |                     Are you aware of any instance of

18 |     Tolbert conducting any investigative activity in a

19 |     homicide when he was head of Major Crimes?

20 |                     MR. BERGER:  Objection, vague.

21 |                     THE WITNESS:  No, ma'am.

22 | BY MS. GREEN:

23 | Q   Fair to say it was rare for him to be going out to a

24 |     homicide scene when he was at that senior level,

25 |     correct?



```
 1                    THE WITNESS:  Yes.

 2   BY MS. GREEN:

 3   Q   If you're providing a suspect with information about

 4       the crime scene, or potential perpetrators, that's

 5       something that you were trained to document,

 6       correct?

 7                    MR. BERGER:  Same objections.

 8                    THE WITNESS:  Yes.

 9   BY MS. GREEN:

10   Q   And the DPD also had specific policies relating to

11       interrogation of juvenile suspects, correct?

12                    MR. BERGER:  Objection, foundation.

13                    THE WITNESS:  Yes.

14   BY MS. GREEN:

15   Q   And I actually want to show you a policy and see if

16       it's consistent with your recollection of what it

17       was back in 2007, okay?

18   A   Okay.  No problem.

19                    MR. BERGER:  Is this a prior exhibit

20       or --

21                    MS. GREEN:  No.  I'm going to mark

22       this one.  Let's mark this as Exhibit 52, please.

23       Sorry.  Here you go.

24                    MR. BERGER:  Thank you.

25                    (Deposition Exhibit No. 52 was marked
```



1        for identification.)

2   BY MS. GREEN:

3   Q    I'm now handing to you what's been marked as

4        Exhibit 52 --

5                    MR. BERGER:  Can I take a look at

6        that?

7                    THE WITNESS:  Uh-huh.

8   BY MS. GREEN:

9   Q    Do you recognize the format of this document to be

10       that of the Detroit Police Department Manual?

11  A    Yes.

12  Q    Okay.  I want to show you if you'll turn to page 5,

13       do you see at the top there it says section on

14       interviewing juveniles?

15  A    Yes.

16  Q    Could you just read the bullet number 1 and let me

17       know when you're done?

18  A    Okay.

19                   MR. BERGER:  Do you want her to read

20       it out loud or --

21                   MS. GREEN:  No, no.  Just read it to

22       yourself.  This is the only thing I'm going to ask

23       you questions about.  Or actually, I might have

24       more.

25                   THE WITNESS:  (Reviewing.)  Do you



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                              99

```
 1        want me to read 2 and 3 or just 1?
 2   BY MS. GREEN:
 3   Q    No, just 1.  Is what you read consistent with your
 4        understanding of the juvenile interrogation policy
 5        when you were in Homicide?
 6   A    Yes, ma'am.
 7   Q    Okay.  And so, when you were in Homicide, including
 8        in 2007, it was understood that when you wished to
 9        interview and question a juvenile about the
10        commission of a crime, the investigator was
11        responsible for doing so in the presence of a parent
12        or legal guardian if feasible, right?
13   A    Correct.
14   Q    And that's how you were trained, correct?
15   A    That's correct.
16   Q    And in fact, you were also trained that the parent
17        or legal guardian must also be advised by the
18        interviewing officer of the juvenile's
19        Constitutional protections, correct?
20   A    That's correct.
21   Q    Okay.  And -- so even though this policy says 2008,
22        this is what you were trained on even before 2008,
23        correct?
24   A    Correct.
25   Q    Okay.  That was the policy for -- as you recall it
```



1      as long as you were in Homicide, correct?

2  A   That's correct.

3  Q   And, in fact, you -- when you were conducting

4      juvenile interrogations, you applied this policy,

5      correct?

6  A   Yes, I did.

7  Q   You conducted those interrogations in front of a

8      parent or legal guardian or otherwise gave them the

9      explicit opportunity to be present, correct?

10 A   Correct.

11 Q   Because you knew if you weren't doing that, you

12     would be violating the Detroit Police Department

13     policy, correct?

14              MR. BERGER:  Objection, foundation,

15     form.  You can go ahead.

16              THE WITNESS:  Oh.  Yes.

17 BY MS. GREEN:

18 Q   And could be subject to discipline for that type of

19     conduct, correct?

20              MR. BERGER:  Objection, foundation.

21              THE WITNESS:  Yes.

22 BY MS. GREEN:

23 Q   Fair to say Homicide investigators like yourself

24     were responsible for understanding this juvenile

25     policy and conducting their interrogations in the



BARBARA J. SIMON                                          October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                                    102

```
 1      violated this policy, correct?
 2                   MR. BERGER:  Objection, argumentative.
 3      You can go ahead.
 4                   THE WITNESS:  Oh, I'm sorry.  I'm
 5      sorry.
 6                   MR. BERGER:  No, like she said, unless
 7      I tell you don't answer, answer.
 8                   THE WITNESS:  Oh, okay.  Okay.  Can
 9      you repeat the question?  I'm sorry.  I'm so sorry.
10  BY MS. GREEN:
11  Q   Sure, no problem.  This juvenile interrogation
12      policy, which quote -- withdrawn.
13                   This juvenile interrogation which
14      requires the interrogation of a juvenile to be
15      conducted in the presence of a parent or guardian if
16      feasible --
17  A   Okay.
18  Q   -- was such a strict policy that it would surprise
19      you to learn that a Homicide investigator violated
20      it, correct?
21                   MR. BERGER:  Objection, argumentative,
22      foundation.
23                   THE WITNESS:  Yes, ma'am.
24  BY MS. GREEN:
25  Q   And Tolbert told us at his deposition that he
```



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                          103

1      understood DPD policy to be in 2007 that he was

2      required to affirmatively ask a parent or guardian

3      if they wanted to be present in the interrogation.

4      Was that your understanding as well?

5                    MR. BERGER:  Objection to form.

6                    THE WITNESS:  Yes, ma'am.  The parent

7      had to be present, yes, ma'am.

8                    MS. GREEN:  Okay.  It is now 12:16.

9      Can we go off the record for a second?

10                   (Off the record at 12:17 p.m.)

11                   (Back on the record at 12:29 p.m.)

12     BY MS. GREEN:

13     Q   Officer Simon, you had the opportunity to confer

14         with your Counsel during the break, correct?

15     A   Yes.

16     Q   Would you like to change any of your sworn testimony

17         after that break?

18     A   No.

19     Q   All right.  I want to talk a little bit about the

20         Runyon homicide investigation now, okay?

21     A   Okay.

22     Q   So, the Homicide file technically lists you as the

23         officer in charge of that investigation, at least

24         initially?

25     A   Yes.



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                           113

```
 1                    All right.  If you turn to the bottom
 2        of -- it's actually the second page of the Exhibit,
 3        but it's labeled 25 at the bottom.  Do you see it?
 4   A    Page 25?
 5   Q    Yeah, going by the transcript page numbers.
 6   A    Yes, ma'am.
 7   Q    If you just read page 25 line 23 to page 26, line 8.
 8        And let me know when you're done.
 9   A    You said -- I'm sorry.  You said?
10   Q    I'm sorry.  Page 25 line 23, I misspoke.
11   A    Line 23 to line --
12   Q    To line 8 on the next page.
13   A    Oh, okay.  Okay.  To line 8, yes, ma'am.
14   Q    And if you look at page -- back at page 25 --
15   A    Uh-huh.
16   Q    -- you'll see that Michael Russell's getting sworn
17        in, do you see that at line 12?
18   A    Yes, ma'am.
19   Q    And then the Court actually refers to Russell as the
20        officer in charge in the matter, correct?
21                    MR. BERGER:  I'm going to object as it
22        mischaracterizes the statement by the Court.
23                    THE WITNESS:  Oh, down at -- yes,
24        ma'am.
25   BY MS. GREEN:
```



 1   Q   Yes.

 2   A   I'm sorry.  Yes.

 3   Q   Okay.  So here it the Court is referring to Michael

 4       Russell as the officer in charge, because he's the

 5       only officer testifying at the preliminary hearing,

 6       correct?

 7                   MR. BERGER:  Objection, foundation.

 8                   THE WITNESS:  Yes, ma'am.

 9   BY MS. GREEN:

10   Q   And you would agree that by this date, for all

11       intents and purposes Michael Russell was the acting

12       officer in charge of the Runyon Street homicide

13       investigation?

14   A   Yes, ma'am.

15   Q   It was essentially your initial assignment, but

16       Russell took over, right?

17                   MR. BERGER:  Objection to form,

18       argumentative.  Mischaracterizes prior testimony.

19                   THE WITNESS:  Yes, ma'am.

20   BY MS. GREEN:

21   Q   He took on the responsibility for following up on

22       leads, for example?

23                   MR. BERGER:  Objection,

24       mischaracterizes prior testimony and assumes facts

25       not in evidence.



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                              115

```
 1                 THE WITNESS:  Yes.
 2   BY MS. GREEN:
 3   Q   Although you remained as part of the Homicide team,
 4       would it be fair to say that in substance your role
 5       ended up being more that of an assisting
 6       investigator rather than an officer in charge?
 7   A   Yes.
 8   Q   All right.  I'm done with this transcript.
 9               Now, you arrived at headquarters the
10       morning after the Runyon homicide came in, right?
11   A   That's correct.
12   Q   And because -- withdrawn.
13               And when you arrived that morning,
14       Russell told you about his interview with Davontae
15       Sanford, correct?
16   A   Yes.
17   Q   And there's some evidence in this case that although
18       you weren't the interrogating officer you may have
19       had Mr. Sanford sign the statement that Russell
20       presented to you?
21               MR. BERGER:  I'm going to object to
22       the form.  I mean -- that's more of a statement as
23       opposed to a question.
24   BY MS. GREEN:
25   Q   Is that correct?
```



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                              123

1   Q   Just line 18 of page 78.

2   A   Oh, okay.  Thank you.  Okay.  I'm done.

3   Q   All right.  So here in her deposition, Ms. Glover is

4       describing being told by an officer that a little

5       boy 14 years old, Davontae, gave himself up and

6       implicated himself in the crime, correct?

7                   MR. BERGER:  Objection, the document

8       speaks for itself.

9                   THE WITNESS:  Oh.

10  BY MS. GREEN:

11  Q   Is that correct?

12                  MR. BERGER:  You can go ahead.

13                  THE WITNESS:  Yes, ma'am.

14  BY MS. GREEN:

15  Q   Okay.  And Ms. Glover is also describing an officer

16      and she's describing a male officer, correct?

17  A   Yes.

18  Q   Who told her that this little boy, Davontae, drew a

19      picture of everything in the living room at the

20      crime scene, correct?

21                  MR. BERGER:  Objection, the document

22      speaks for itself.

23                  THE WITNESS:  Yes, ma'am.

24  BY MS. GREEN:

25  Q   All right.  And as you already told me, Russell was



```
 1      do you?

 2   A  No, I don't.  I thought you was asking me did I --

 3      was I there and he --

 4   Q  Right.

 5   A  -- you know, the way you put it was I there when he

 6      showed me the --

 7   Q  Sure.  I'm just trying -- let me be perfectly clear.

 8                  You weren't present for the sketch,

 9      right?

10   A  Correct.

11   Q  You weren't the officer who said this to Glover,

12      were you?

13   A  No, ma'am.

14   Q  You wouldn't have said that because it would have

15      been a violation of policy to tell her information

16      about the suspect, right?

17                  MR. BERGER:  Objection, foundation.

18                  THE WITNESS:  Yes, ma'am.

19   BY MS. GREEN:

20   Q  Okay.  And -- but you know that Russell was present

21      for the sketch, correct?

22                  MR. BERGER:  Objection, foundation.

23                  THE WITNESS:  Yes.

24   BY MS. GREEN:

25   Q  Can you think of anyone other than Russell who would
```



1     Davontae Sanford without a parent present, that that

2     policy violation would also be misconduct?

3                     MR. BERGER:  Objection, foundation.

4     Calls for speculation.

5                     THE WITNESS:  Yes, ma'am.

6  BY MS. GREEN:

7  Q   Are you aware of Michael Russell being investigated

8     for that misconduct?

9  A   No, ma'am.

10                    MR. BERGER:  Objection, form.

11 BY MS. GREEN:

12 Q   But you saw from the file in this case that he did

13    do that, correct?

14                    MR. BERGER:  Objection, calls for

15    speculation.  Foundation.  Form.

16                    THE WITNESS:  Yes, ma'am.

17 BY MS. GREEN:

18 Q   So when Michael Russell interrogated Davontae

19    Sanford without his parent present, he engaged in

20    misconduct under DPD policy, correct?

21                    MR. BERGER:  Objection, form,

22    foundation, calls for speculation.

23                    THE WITNESS:  I don't know if his

24    parents were there or not.  I wasn't there, ma'am.

25 BY MS. GREEN:



BARBARA J. SIMON                                          October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                                    129

1   Q   You read Michael Russell's deposition, correct?

2   A   Yes, ma'am.  Some of it.  Yes.

3   Q   You told me over the course of three days you read

4       the whole thing?

5   A   Yep.

6   Q   All right.  Did you -- did you see Michael Russell

7       say his parent was there when he interrogated him?

8   A   No.  Not as I can recall, no, ma'am.

9   Q   Okay.  So you would agree that if Michael Russell's

10      testimony is true, he engaged in misconduct in this

11      investigation by interrogating Davontae Sanford

12      without a parent present?

13                  MR. BERGER:  Objection to form,

14      foundation, argumentative.

15                  THE WITNESS:  Yes, ma'am.

16  BY MS. GREEN:

17  Q   And that's the type of misconduct that, frankly,

18      should have been investigated, correct?

19                  MR. BERGER:  Same objections.

20                  THE WITNESS:  Yes.

21  BY MS. GREEN:

22  Q   You've already told me you've never seen that happen

23      in your career, correct?

24                  MR. BERGER:  Same objections.

25                  THE WITNESS:  No, I said I never



BARBARA J. SIMON                                          October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                                    160

1   BY MS. GREEN:

2   Q   Okay.  Even though you didn't testify during the

3       trial, you think you were at the plea?

4   A   Yes.

5   Q   Okay.  And so in Davontae Sanford's plea he named

6       three new perpetrators that were involved in the

7       homicide?

8   A   Yes.

9   Q   They were Bug, Homie and T, correct?

10  A   Yes.

11  Q   And you were not involved in the investigation of

12      these new perpetrators that were named in the plea,

13      correct?

14  A   Correct.

15  Q   And I take it that the reason you weren't involved

16      is because by that time, Russell was running the

17      investigation, correct?

18                  MR. BERGER:  Objection, foundation.

19                  THE WITNESS:  Yes.

20  BY MS. GREEN:

21  Q   And so, it was Russell's responsibility to be

22      investigating these new names, correct?

23  A   I don't know.  I don't know.

24  Q   Well, by that point Russell was the OIC, correct?

25  A   I don't know.  I know he was doing the investigation



BARBARA J. SIMON                                     October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                           171

1    Q    Well, first, were you involved in any investigation

2         of Vincent Smothers --

3    A    No ma'am.

4    Q    -- on any case?

5    A    No, ma'am.

6    Q    Okay.  You never investigated him for any reason,

7         correct?

8    A    No, ma'am.

9    Q    Okay.  So, I'm actually going to turn you back to

10        your MSP interview, Exhibit 18.

11                   All right.  On page 20, are you there?

12   A    Yes.

13   Q    Here is you discussing with MSP investigator

14        Smothers, okay?  And you, on line 6 you're asked,

15        well starting at line 4.

16                   "Okay.  Did you hear --

17                   Uh-huh.

18                   -- that he claimed that he had done

19        that -- that homicide on Runyon Street?

20                   Special Agent Simon, no".

21                   You never got that information?

22                   Special Agent Simon, no, no."

23                   That was accurate information you

24        provided to MSP, right?

25   A    Yes.



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                            175

```
 1                    THE WITNESS:  I heard that.  I can't
 2        say that I seen it on the news.  I heard that.
 3   BY MS. GREEN:
 4   Q    Okay.  You heard it from somebody?
 5   A    Yes.
 6   Q    You would agree that if a professional hit man
 7        confessed to committing a crime with a single other
 8        person who was not Davontae Sanford, that would be
 9        critical information that someone in Homicide would
10        need to follow up on, correct?
11                    MR. BERGER:  Objection to form,
12        foundation.
13                    THE WITNESS:  Yes.
14   BY MS. GREEN:
15   Q    Okay.  First off, because if someone is confessing
16        to murdering four people, you want to follow up on
17        that information and find out if it's true, correct?
18   A    Yes.
19   Q    And second off, you want to make sure if a person
20        who has already been arrested for that crime is not
21        implicated in that confession, that that other
22        person who had been arrested, namely Davontae
23        Sanford, hadn't been wrongfully convicted, right?
24                    MR. BERGER:  Objection to form,
25        foundation.
```



BARBARA J. SIMON                                          October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                            181

```
 1        so --
 2   BY MS. GREEN:
 3   Q   So in any event, as you'll see here, as you read,
 4        Williams indicates that he learned information about
 5        the Runyon Street homicide from Smothers, correct?
 6                    MR. BERGER:  Objection.  The document
 7        speaks for itself.
 8                    THE WITNESS:  (Reviewing.)  Yes.
 9   BY MS. GREEN:
10   Q   And also on page 24 he's indicating that it was his
11        belief that Sergeant Russell was the officer in
12        charge of the investigation at that point, correct?
13                    MR. BERGER:  Same objection.
14   BY MS. GREEN:
15   Q   Page 24, line 8 through 10.
16   A   Okay.  Oh.  Okay.  Yes.
17   Q   Okay.  And that's consistent with your
18        understanding --
19   A   Yes.
20   Q   -- that Sergeant Russell was the officer in charge
21        of the investigation, correct?
22                    MR. BERGER:  Asked and answered.
23                    THE WITNESS:  Yes.
24   BY MS. GREEN:
25   Q   And Williams is indicating here that he gave Russell
```



BARBARA J. SIMON                                         October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                                  182

```
 1        the information?
 2   A    Are you still on page 24?
 3   Q    Yes.  I'm on page 24.  "Did you know that Sergeant
 4        Russell had been involved in investigating the
 5        Runyon Street homicide?
 6                      Answer:  Yes.
 7                      And that's why you gave him the
 8        information?
 9                      Yes."
10   A    Yes, I see that.  Yes, okay.
11   Q    Okay.  So Williams here is testifying that he gave
12        Sergeant Russell the information that Smothers gave
13        him about the Runyon Street homicides, correct?
14                      MR. BERGER:  Objection, the document
15        speaks for itself.
16                      THE WITNESS:  That's what it says,
17        yes.
18   BY MS. GREEN:
19   Q    Right.  And that doesn't surprise you, right,
20        Williams sharing that information with the OIC on
21        the case, right?
22   A    Correct.
23                      MR. BERGER:  Objection, foundation,
24        calls for speculation.
25   BY MS. GREEN:
```



BARBARA J. SIMON                                    October 16, 2018
DAVONTAE SANFORD vs CITY OF DETROIT                              183

1   Q   Because it would have been Russell's job as the OIC

2       to take that lead and investigate it, correct?

3                   MR. BERGER:  Objection, foundation.

4       Calls for speculation.

5                   THE WITNESS:  Yes.

6   BY MS. GREEN:

7   Q   And if a person is confessing to committing a

8       quadruple homicide with someone other than the

9       person who has been convicted for that crime, you

10      would agree that that's incredibly important

11      information for the OIC on the case, Russell, to

12      look into, right?

13                  MR. BERGER:  Objection, assumes facts

14      not in evidence.

15                  THE WITNESS:  Yes.

16  BY MS. GREEN:

17  Q   And you don't have any reason to question

18      Investigator Williams' credibility, correct?

19                  MR. BERGER:  Objection.  Improper

20      effort to bolster credibility.

21                  THE WITNESS:  No, ma'am.

22  BY MS. GREEN:

23  Q   As far as you can recall, he was always honest when

24      he testified under oath?

25                  MR. BERGER:  Objection, foundation.



1                    CERTIFICATE OF NOTARY

2    STATE OF MICHIGAN  )

3                       ) SS

4    COUNTY OF GENESEE  )

5                I, Quentina Rochelle Snowden, a Notary

6    Public in and for the above county and state, do

7    hereby certify that the above deposition was taken

8    before me at the time and place hereinbefore set

9    forth; that the witness was by me first duly sworn

10   to testify to the truth, and nothing but the truth;

11   that the foregoing questions asked and answers made

12   by the witness were duly recorded by me

13   stenographically and reduced to computer

14   transcription; that this is a true, full and correct

15   transcript of my stenographic notes so taken; and

16   that I am not related to, nor of counsel to either

17   party nor interested in the event of this cause.

18

19                Dated:  October 24, 2018

20

21   _____

22                Quentina Rochelle Snowden
                  CSR-5519, Notary Public
23                Genesee County, Michigan
           My Commission expires:  1-04-24
24

25



800.211.DEPO (3376)
EsquireSolutions.com