UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAE SANFORD,

       Plaintiff,                                  No. 17-13062

v.                                              District Judge David M. Lawson
                                                        Magistrate Judge R. Steven Whalen

CITY OF DETROIT, MICHAEL
RUSSELL, and JAMES TOLBERT,

       Defendants.
_____/

## OPINION AND ORDER

      Before the Court is Plaintiff's Motion to Compel Production of Documents Relevant to Plaintiff's *Monell* Claim, as well as the Individual Defendants' Personnel Files, Disciplinary records, Training Records, and Handwritten Notes [Doc. #39]. For the reasons and under the terms discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

      On September 17, 2007, four people were shot to death in a house on Runyon Street on the East Side of Detroit. This cases arises out of the arrest, prosecution, and imprisonment of Plaintiff Davontae Sanford for those murders. Mr. Sanford was 14 years old at the time of the homicides, and served approximately nine years in prison before his attorneys and the Wayne County Prosecutor's Office stipulated to set aside his conviction in June of 2016. On July 19, 2016, the trial court dismissed the homicide charges.

      Mr. Sanford alleges that the Defendant police officers Russell and Tolbert, who initially investigated the quadruple homicide, fabricated evidence against him, including admissions and a sketch of the crime scene they prepared, but falsely attributed to Mr.

-1-

Sanford. He also alleges that these Defendants suppressed exculpatory evidence, including the fact that one Vincent Smothers confessed to the Runyon Street homicides, as well as other evidence corroborating Smothers' confession. In Count I of the complaint [Doc. #1], Mr. Sanford brings a Fourteenth Amendment Due Process claim under 42 U.S.C. § 1983 for fabrication of inculpatory evidence, suppression of material exculpatory evidence, and coercion; in Count II he brings a Fourth and Fourteenth Amendment claim against the individual Defendants; and in Count III, he brings a claim against Defendant City of Detroit under *Monell v. Department of Social Services of City of New York* 436 U.S. 658 (1978), alleging that numerous "improper, flawed, erroneous and inappropriate police investigative methods constituted customs, policies and practices" of the City. *Complaint*, ¶ 151.[1]

In their Joint List of Unresolved Issues [Doc. #61] regarding Plaintiff's motion, the parties classify their dispute under three general categories:

(1) Whether Plaintiff's *Monell* claim arose before the Detroit bankruptcy, and whether it has therefore been discharged.

(2) Whether Plaintiff's discovery requests seeking employment, personnel, and training records of the individual Defendant police officers is overbroad, or is barred by the restrictions on personal information contained in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998).

(3) Whether records that Plaintiff seeks are protected by attorney-client, work product, of deliberative process privilege.

---

[1] Stating that it is a non-exclusive list, ¶¶ 151(a) through (k) describe 11 specific flawed investigative methods that the City allegedly ratified, condoned, tolerated and approved.

1. The *Monell* Claim

On December 4, 2018, the Court granted Defendant City of Detroit's motion to dismiss, holding that Plaintiff's claim against the City is a "prepetition claim" that was discharged when the Detroit bankruptcy plan was confirmed on November 12, 2014, and became effective on December 10, 2014. *See In re City of Detroit, Michigan*, 548 B.R. 748, (Bankr. E.D. Mich. 2016). "Sanford's claims against the City must be considered prepetition claims. As such, it is barred by the City's bankruptcy. 11 U.S.C. §§ 524(a)(2)." *Opinion* [Doc. #142] at 12.

Accordingly, any discovery requests directed at the Plaintiff's *Monell* claim are irrelevant, and will be DENIED.

2. Employment Records of Individual Defendants

a.

Defendants correctly argue that in *Kallstrom*, the Sixth Circuit found that police officers have a constitutionally protected privacy interest in certain personal information that under certain circumstances outweighs the need for disclosure. Specifically, the Court found that disclosure of the officers' "addresses, phone numbers, and driver's licenses and the officers' families' names, addresses, and phone numbers" would increase the risk of harm to the officers and their families. *Id*., 136 F.3d at 1067.

On the other hand, the Plaintiff has a right to discovery of relevant evidence. However, as discussed above, given the dismissal of the City, relevant evidence does not include material bearing on the Plaintiff's *Monell* claim. Plaintiff stated in the Joint List of Unresolved Issues [Doc. #61], at 6, Pg. ID 202, "All records pertaining to the individual Defendants' respective employment records and histories within and, as to Defendant Tolbert, departure from, the Detroit Police Department, are directly relevant to

Plaintiff's claims against Defendants in this case, and in particular to their *Monell* claim against Defendant City." The *Monell* claim is gone, so to a large extent Plaintiff's discovery request for personnel records must be denied.[2] But Plaintiff is entitled to discovery of Defendants' employment records relating to any disciplinary actions or findings contained therein. As the scope of discovery under Fed.R.Civ.P. 26 is broader than that under the Federal Rules of Evidence, the Defendants must produce all disciplinary actions contained in their employment/personnel files, not just those related to *Brady* violations, coerced confessions, or fabricated evidence. If Defendants claim privilege as to any of the material, they must provide a privilege log. Pursuant to *Kallstrom*, the Defendants may redact personal information such as addresses, phone numbers, and driver's licenses and the officers' families' names, addresses, and phone numbers, as well as medical information protected under HIPPA.

b. Training Records

In the Joint List, Defendants state that they "are agreeable to producing a list of Defendant Russell's and Defendant Tolbert's City of Detroit training records and copies of those records that are easily obtainable. They would also agree to have a designated City official certify that to the best of that person's knowledge, information, and belief formed after a reasonable inquiry, that the produced training records list and training records were all that could be found." Doc. #61, at 6, Pg. ID 2020. This issue is resolved, and Defendants will produce what they have agreed to produce.

c. Allegations or Findings of Other Misconduct

In RFP Nos. 5(i)-9m) and (p), Plaintiff seeks records of all allegations and/or findings against Defendants of any misconduct, citizen complaints, or investigations,

---

[2] This relates to Request for Production ("RFP") Nos. 5(a)-c, (e)-(h), (q)-(s), and 7.

substantiated or not, and in RFP No. 6, allegations or investigations of Defendants' conduct with regard to bias and/or fabrication of evidence.

As I stated above, Plaintiffs are entitled to discovery of all disciplinary factual findings and disciplinary actions taken against Defendants, regardless of whether or not they relate to the claims in this case. However, as to allegations and unsubstantiated complaints that have not resulted in discipline, the scope of relevance and discovery is narrower. In *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006), the Court explained that records of unsubstantiated misconduct are discoverable under two theories of relevance: (1) to prove defendants' intent, and (2) to prove municipal liability under *Monell*. In the Joint List [Doc. #61], at 7, Pg. ID 2021, Plaintiff also stresses the relevance of this information under *Monell*. Again, however, the *Monell* claim against the City has been dismissed.

As to the relevance of Plaintiff's requests to the issue of Defendants' intent, discovery of unsubstantiated complaints or complaints that did not lead to discipline are relevant only if they involve the same type of conduct alleged in the complaint. *See Frails*, at 117 ("Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, couold lead to evidence that would be admissible at trial and thus, are discoverable"); *Williams v. City of Hartford*, 2016 WL 1732719, at *6 (D.Conn. 2016)(providing for discovery of unsubstantiated complaints of defendant police officer's misconduct "of a similar nature" to that alleged in the complaint); *Chillemi v. Town of Southampton*, 2016 WL 1781496, at *6 (E.D.N.Y. 2015)(same); *Martin v. Conner*, 287 F.R.D. 348 (D. Maryland 2012)("[F]ederal cases support the proposition that unsustained complaints should be discoverable as long as they are relevant to the cause of actions"); *Wilson v. Hill*, 2010 WL 5014486 (S.D. Ohio

2010)(approving discovery of unsubstantiated claims of excessive force, the claim made in the complaint). As to unsubstantiated claims other that they type alleged in the complaint, *Frails* held, "Unsubstantiated instances of misconduct not related to the allegations raised in the instant complaint are not reasonably likely to lead to such evidence, and need not be produced." 236 F.R.D. at 118.

Therefore, the Plaintiff's request for *all* unsubstantiated complaints or complaints that did not result in discipline is DENIED. However, the motion is granted as to such unsubstantiated complaints involving alleged misconduct of a similar nature to that alleged in the complaint.

Finally, Defendant argues that some of this material may be protected by the deliberative process privilege. In *Liuzzo v. United States,* 508 F.Supp. 923, 937 (E.D.Mich.1981), the Court held that the deliberative process privilege protects from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." To come within the protection of the deliberative process privilege, the material must of necessity be "deliberative" or "evaluative." In the oft-cited case of *Kaiser v. Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (1958), the Court explained that while the privilege applies to "confidential intraagency advisory opinions," it does not extend to "objective facts" upon which an agency's decisions are based. In *Ostoin v. Waterford Twp. Police Dept*., 189 Mich.App. 338, 471 N.W.2d 668 (1991), the Court explained:

> "Whether applied to administrative litigation against the federal government or civil rights litigation against police departments, the central question in the application of the privilege is whether the material sought is factual or evaluative. See *McClelland v. Andrus,* 196 U.S.App.D.C. 371, 379-381, 606 F.2d 1278 (1979)....The purpose of the deliberative-process privilege is to foster freedom of expression among governmental employees involved in

> decision making and policy formulation. Accordingly, factual material falls outside the scope of the privilege; to be protected, the material must comprise part of the deliberative or evaluative process. *McClelland, supra,* 196 U.S.App.D.C., p. 380, 606 F.2d 1278."

*See also Lewis v. City of Detroit,* 234 F.R.D. 157, 160 (E.D.Mich.2006)(the privilege does not extend to the facts upon which an agency's decisions are based). Therefore, any factual material, including the substance of any complaint made against these Defendants, is fair game.

To sum up, Defendants will produce (1) all disciplinary factual findings and actions taken against Defendants, regardless of whether or not they relate to the claims in this case; and (2) unsubstantiated complaints involving alleged misconduct of a similar nature to that alleged in the complaint. If the Defendants claim privilege, including deliberative process privilege, they will submit a privilege log.

> d. Tax Records and Indemnification Information

While the tax records of the individual Defendants may be relevant to the issue punitive damages, the Plaintiff's request for those records is premature, pending the City's decision as to whether it intends to indemnify these police officer Defendants. The Plaintiff may obtain that information by way of interrogatories. At this time, the request for the tax records is DENIED WITHOUT PREJUDICE.

> 3. Records Relating to the Homicide

Central to Plaintiff's case is his claim that the Defendant police officers–Russell and Tolbert–fabricated evidence against him, withheld exculpatory evidence, and coerced a false confession, resulting in the conviction of a 14-year-old boy. The Plaintiff's innocence of the homicide charge is also central to his claim. Material from the homicide file–including any material gathered after Plaintiff's conviction–is relevant for purposes of discovery. In general, the homicide file is discoverable, and subject to the protections

described in *Flagg el rel. Bond v. City of Detroit*, 268 F.R.D. 279, 283-285 (E.D. Mich. 2010), notwithstanding that there may be an ongoing investigation into the killings. However, these Defendants, including the City of Detroit, do not have control over or the ability to produce a file that is in the custody and control of the Wayne County Prosecutor's Office. Moreover, Plaintiff concedes that he received from the Defendants approximately 566 pages of material that *were* in the City's possession relating to the homicide file. *See* Joint List, at 3, Pg. ID 2017. Therefore, without prejudice to Plaintiff seeking the file from Wayne County, this discovery request is DENIED AS MOOT.

4. Other Lawsuits in which Defendants were Named

Defendants are correct that the pleadings and other filings in these lawsuits would be available to Plaintiff as public records. Therefore, Defendants need not produce the files in these lawsuits. However, Defendants will produce a list of the lawsuits in which Defendants Russell and Tolbert were named, including the court in which they were filed and the case/docket number.

5. Other Investigations Involving Davontae Sanford

Defendants state that the City has already produced this material. Therefore, this request is DENIED AS MOOT.

Under these terms, Plaintiff's Motion to Compel [Doc. #39] is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 16, 2019

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing document was sent to parties of record on January 16, 2019, electronically and/or by U.S. mail.

            s/Carolyn M. Ciesla
            Case Manager to the
            Honorable R. Steven Whalen