UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAE SANFORD,

                    Plaintiff,                                    Case Number 17-13062
v.                                                               Honorable David M. Lawson

MICHAEL RUSSELL and JAMES TOLBERT,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTIONS TO EXCLUDE VARIOUS DEFENSE EXPERT WITNESSES

The scheduling order in this case required the defendants to serve their pretrial disclosures

of expert witnesses by August 11, 2018.  The plaintiff has filed several motions, now before the

Court, challenging the use at trial of testimony by numerous witnesses listed in the defendants'

pretrial witness lists on the grounds that the witnesses are experts and the defendants' disclosures

are late, inadequate, or, in some instances, nonexistent.  The defendants respond that no disclosures

are required for some of the witnesses because the witnesses were not specially retained by them,

many of the witnesses are not experts or they are hybrid fact-and-expert witnesses, and if

disclosures were required, the failure to furnish them was harmless and substantially justified.  The

defendants, whose attorney acknowledged at a hearing that he did not retain experts until the day

before the disclosure deadline, have not complied with their disclosure obligation, and they have

not shown that their noncompliance was harmless or substantially justified.  Therefore, the Court

will grant the plaintiff's motions to exclude the witnesses and will not permit the defendants to

offer testimony at trial about opinions based on special knowledge or expertise.

## I.

The case was filed by plaintiff Davontae Sanford, who was accused of murdering four people when he was fourteen years old. After Sanford confessed, entered a midtrial guilty plea in 2008, was sentenced, and spent over eight years in prison, another person confessed to the crimes and confirmed that Sanford was not involved. A state police investigation uncovered evidence that Sanford's confession and ensuing guilty plea were the product of misconduct by Detroit police officers, including the defendants here. His conviction was set aside and all charges against him were dismissed in 2016.

The case is scheduled for trial in August of this year. The plaintiff has filed three motions concerning the defendants' listed experts. One is to preclude the testimony of "unretained experts," including (1) 28 persons with sundry professional designations listed as "Michigan Department of Corrections medical or psychological providers"; (2) 20 persons identified as "MDOC medical and correctional staff"; (3) Scott Herzog and Michael Reizen, who apparently are Detroit police officers with some level of expertise on street gangs; (4) police officer Christopher Salsbury, who was a tracking dog handler; and (5) William Steiner, a laboratory chemist who purportedly performed a test to detect gunshot residue. In the second motion, the plaintiff seeks to exclude any opinion testimony by Dr. Lynne Schwarz on the question of whether the plaintiff was coerced to confess to the quadruple murders. The third motion is directed to the anticipated testimony of Dr. Michael Welner, a psychologist, and Mark St. Peter, an expert in "phone forensics."

## II.

The common theme of the three motions is that the defendants have utterly disregarded the requirements of the pretrial disclosure rule that applies to witnesses who intend to offer opinion

testimony. The discovery and disclosure rules apply to each of these motions, and it is useful to review them here.

Under Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." In addition, "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

An expert witness is not required to prepare and sign a written report of his or her investigation and opinion where the expert was not "retained or specially employed to provide expert testimony in the case" and the witness's "duties as the [defendants'] employee [do not] regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Where a witness's "opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation . . . he falls outside the compass of Rule 26(a)(2)(B)." *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (citing *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866, 869 (6th Cir. 2007)).

But the disclosure obligations of Rule 26(a)(2)(B)(i)-(vi) apply to witnesses who will "present evidence under Federal Rule of Evidence 702, 203, or 705" and who were "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Treating physicians, for example, typically do not trigger that requirement. *Fielden*, 482 F.3d at 871 (holding that "a report is not required when a treating physician testifies within a permissive core

on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment").

In 2010, the Supreme Court amended Rule 26(a)(2) to address the disclosure requirements for witnesses who would offer expert opinions but who do not fit the description of those who are required to draft full reports. Rule 26(a)(2)(C) was added in 2010 to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 979 (W.D. Ky. 2017) (citing Fed. R. Civ. P. 26, Adv. Comm. Note). "[A] report is not required of witnesses who are not retained or employed for the purpose of providing expert testimony in a particular case or . . . employees whose regular job duties do not regularly require such testimony." *Ibid.* For those witnesses, a party must disclose to the other party "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The disclosure may be made by counsel — not the expert himself — and generally may be "considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2), Adv. Comm. Notes to 2010 amends. But it must be "made at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(D).

When a party does not comply with the disclosure requirements, the party "'is not allowed to use' the information or person that was not disclosed 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Baker Hughes Inc. v. S&S Chemical, LLC*, 836 F.3d 554, 567 (6th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)). According to the Sixth Circuit, "Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified."

*Sexton v. Uniroyal Chemical Co.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003). "'Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Ibid.* (quoting *Ames v. Van Dyne*, 100 F.3d 956, 1996 WL 662899, at *4 (6th Cir. Nov. 13, 1996) (Table)).

The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless": "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). "'The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'" *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)). "The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 826 (N.D. Ohio 2009); *see also Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)).

With these principles in mind, we turn to the plaintiff's three motions.

## A. Motion to Strike the Testimony of Defendants' "Unretained Experts"

### 1. MDOC Medical Staff Witnesses

The plaintiff argues that the MDOC witnesses, police officers Herzog, Reizen, Salsbury, and Steiner should not be allowed to offer opinion testimony because (1) for the 48 witnesses disclosed as undifferentiated aggregates, the "summary" of opinions does not associate any opinion with any particular expert, nor does it recite even a modest factual basis for any of the supposed opinions; (2) the disclosures do not give any indication whether the scope of the proposed testimony may include opinions solicited for the purpose of this litigation, or whether any of the witnesses regularly are called upon to give expert testimony in the course of their work, either of which would subject them to the much more demanding requirements of 26(a)(2)(B) rather than the looser summary disclosure requirements of 26(a)(2)(C); and (3) none of the feeble attempts at disclosure are excused by the mere identification of witnesses by name accompanied by a massive document dump of medical and prison records with a "see generally" citation, which effectively left the plaintiff either to comb thousands of pages of documents for some hint as to what the proffered opinions might be, or to depose 48 witnesses to learn the extent of their testimony.

In several sections of their response ironically headed "Summary," the defendants belatedly (on December 14, 2018) attempt to identify the specific opinions by certain named witnesses that they propose to offer at trial, out of the laundry list of 48 individuals serially named in their bulk disclosures. They now argue that (1) none of the witnesses listed were retained by either of the remaining defendants (Russell and Tolbert), nor are they employed by either of the defendants, and, thus, it does not matter whether they regularly may be called upon to testify on behalf of any non-party (i.e., the City of Detroit, which was dismissed from the case); (2) all of the witnesses are "hybrid fact/expert witnesses" who will testify about their observations in the course

of either investigating the criminal case or treating and interacting with the plaintiff after he was convicted, while he was in prison; and (3) none of the medical testimony should come as any "surprise" to the plaintiff, since all of the experts named were the plaintiff's medical treaters while he was in prison, and their conclusions were memorialized in the plaintiff's own medical records.

The attempted bulk disclosure of 28 "medical and psychological providers," devoid of any coherent summary of any opinions proposed to be espoused by any one of them, and with no indication of the qualifications of any of those persons, or any basis for those opinions, was insufficient to fulfill the defendants' obligations under Rule 26(a)(2), regardless of whether any of the witnesses qualify for the more forgiving treatment under section 26(a)(2)(C). As the district court explained in *Ogle v. Koorsen Fire & Sec., Inc.*, 336 F. Supp. 3d 874 (S.D. Ohio 2018), confronting nearly identical circumstances:

> [For] experts not retained or specially employed to provide expert testimony in a case, e.g., treating doctors, the mere disclosure of the expert's identity is insufficient. *See* Fed. R. Civ. P. 26(a)(2)(C). Instead, the disclosure of a non-retained expert's identity must be accompanied by a statement regarding: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." While the disclosures required by Rule 26(a)(2)(C) are considerably less extensive than the report required by Rule 26(a)(2)(B), the Rule does not permit a Plaintiff to "dump" medical records on the defendant, nor [does it] eliminate the requirement of providing summary disclosures. [I]dentifying physicians in response to interrogatories and the production of medical records in discovery does not satisfy Rule 26(a)(2)(C) and does not constitute harmlessness under Rule 37(c)(1). [Moreover, the term "summary"] is defined as a brief account that states the main points of a larger body of information, not a prodigious volume of material; it does not suffice to reference large bodies of material as sources of facts.

*Ogle*, 336 F. Supp. 3d at 877 (citations and quotations omitted; collecting cases).

The production of thousands of pages of medical and correctional records cannot sensibly be regarded as fulfilling the requirements Rule 26(a)(2)(B) or (C), because that does not comprise the required "summary" of the proposed opinions and their bases. Moreover, the aggregated,

undifferentiated disclosures made it impossible for the plaintiff to discern — except by pure speculation — which expert would be called to give any particular opinion, which made it impossible for the plaintiff to evaluate either the qualifications or the reliability of the analyses that would be provided by any of them. As the *Ogle* court further noted:

> Plaintiff . . . identifie[d] [as experts] an entire medical clinic . . . and unidentified medical records custodians. Nowhere on the disclosure does Plaintiff's counsel indicate whether or not the experts identified were retained or specially employed. In other words, Defendants (and the Court) are left to speculate as to whether Rule 26(a)(2)(B) or Rule 26(a)(2)(C) applies to each expert . . . .
>
> [W]ithout dispute, the document filed by Plaintiff's counsel was unaccompanied by any report authored by any of the experts identified. Thus, insofar as any of the experts identified were retained or specially employed to provide expert testimony at trial, the disclosure, on its face, fails to comply with Rule 26(a)(2)(B).
>
> To the extent any of the identified experts were not retained or specially employed by Plaintiff, the disclosure also fails to meet even the less extensive requirements of Rule 26(a)(2)(C), i.e., there is no statement regarding the subject matter upon which [each] expert is expected to testify or present evidence. Nor does the disclosure set forth a summary of the facts and opinions of any expert. As note[d] above, the mere identification of each expert's name and contact information fails to satisfy the disclosure requirements of Rule 26(a)(2)(C), because Rule 26(a)(1)(i) already requires parties to provide the name and contact information of each individual likely to have discoverable information — along with the subjects of that information, and, therefore, providing such information alone fails to satisfy the requirements of Rule 26(a)(2)(C).

*Ogle*, 336 F. Supp. 3d at 879 (footnotes, citations, and quotations omitted); *id.* at 881 ("The records submitted in camera related to Dr. Matrka are just that — medical records — not, *inter alia*, a report or summary of opinions as required by either Rule 26(a)(2)(B) or (C)."). And "the mere fact that witnesses may be available for deposition is insufficient to excuse noncompliance with Rule 26(a)(2) because 'obviat[ing] the need to provide Rule 26(a)(2) disclosures and reports by simply making . . . experts available to be deposed would render the Rule meaningless[.]'" *Id.* at 877 (quoting *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 454 (E.D. Mich. 2017)).

None of the pertinent factors support the defendants' position that their disclosure violations were either substantially justified or harmless. *See Howe*, 801 F.3d at 747-48. The surprise to the plaintiff as a result of the tardy disclosure of numerous expert opinions (at long last only in any coherent fashion in the defendants' response brief) is extreme; nothing in the skeletal "disclosures" previously given afforded any hint about what opinion any of these supposed experts might give, or the basis for any such opinion. The case now on the eve of trial, and the plaintiff has virtually no ability to cure the surprise, given that the only way he could explore the substance of the testimony without proper reports or summary disclosures would be to depose 28 individuals, in the midst of the press of trial preparation, long after the discovery period has closed and dispositive and expert motions have been filed.

The defendants contend that the evidence is "critical" to their rebuttal of the plaintiff's presentation on damages, but they do not even attempt to offer any plausible explanation for their failure to make any adequate effort at disclosure. In fact, as discussed further below with respect to the defendants' expert Dr. Welner, it appears that the entire reason that the defendants never properly designated or disclosed their experts was simply because they assumed that they would be granted a months-long extension of the expert deadlines, and they therefore made no effort to comply with the schedule imposed by the Court.

## 2. Medical and Correctional Staff and Gang Experts

The defendants apparently seek to identify 20 variously named "medical and correctional staff" as "gang experts." They contend that their opinions will be formulated on the basis of their encounters with the plaintiff while in prison, analogizing them to treating physicians. It is apparent, however, that those forthcoming opinions will not be confined to their own observations; rather they certainly must include a fact base beyond their exposure to the plaintiff alone. Even

treating physicians who will testify beyond their own observations of their patient are deemed "retained experts" to whom the more rigorous requirements of Rule 26(a)(2)(B) apply. *E.g.*, *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 11–cv–01094, 2013 WL 1189493, at *10–12 (N.D. Ga. March 21, 2013) (concluding that "prior caselaw concerning the standard for when a hybrid expert, such as a treating physician, should be deemed a full-blown Subsection B expert has not been abrogated by the newly-added text in Rule 26(a)(2)(C)," and requiring 26(a)(2)(C) disclosures "if a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment" and a 26(a)(2)(B) report where "the physician's opinion was based on facts gathered outside the course of treatment"); *see also Avendt v. Covidien Inc.*, 314 F.R.D. 547, 558 (E.D. Mich. 2016) (collecting cases).

By that standard, the defendants' attempt at disclosure must be deemed woefully inadequate. For all of the same reasons discussed above, the failure properly to disclose the 20 variously named "medical and correctional staff" as "gang experts" cannot be excused on any of the grounds argued by the defendants.

In addition, the "disclosures" as such do not supply any basis even suggesting that any of the persons named are in any way qualified to testify about gang culture or symbology. The deficient disclosures are particularly troubling for this category of witnesses because, as the plaintiff points out, the Sixth Circuit has warned that testimony about gang affairs must be carefully evaluated to determine that the witness has appropriate expertise to testify about the customs and culture of a particular gang in question. *United States v. Rios*, 830 F.3d 403, 414 (6th Cir. 2016) ("Given the variation in practices among different gangs, a gang expert's testimony on these relevant subjects is *reliable only insofar as it is based on significant experience with the gang about which the expert is testifying*." (emphasis added)). The defendants have not made any

attempt, even in their responsive briefing, to explain how any of the listed witnesses are qualified by "significant experience" with pertinent gang affairs.

### 3. Gang Intelligence Officers

For the same reasons noted above, the "disclosure" of "Gang Intelligence" officers offers no clue as to what opinions they would give, what the basis of any such opinions could be, or how they would be qualified to give those opinions by their significant experience with gangs.

### 4. Christopher Salsbury

In this case, the disclosures and the undisputed record establish that Detroit police officer Christopher Salsbury was required to produce a formal report under Rule 26(a)(2)(B), because he was "specially employed" to render his expert opinion in the course of both the criminal proceeding and in this civil litigation. In fact, in the former proceeding it appears likely that his involvement personally was directed by one or the other of the defendants in this case during the course of their investigation. Salsbury likely in regularly called to testify as an expert witness in the course of his job; he certainly was so called in the criminal case. However, whether or not he regularly was called upon by the City of Detroit to give expert testimony in the course of his work, he still was required to produce formal expert reports because his opinions comprise matters not immediately derived from his personal involvement in the underlying facts of the case. *See McElveen v. Wal-Mart Stores, Inc.*, No. 17-90, 2019 WL 638371, at \*2 (S.D. Miss. Feb. 14, 2019) (addressing the circumstances of a treating physician and noting that "[c]onversely, where a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert and must comply with Rule 26(a)(2)(B). . . . Therefore, if a treating physician's expected testimony — whether fact or opinion — is not in the medical records from his or her

treatment of the plaintiff, the plaintiff is required to produce an expert report in compliance with Rule 26(a)(2)(B)") (quoting *Barnett v. Deere*, 15-2, 2016 WL 4735312, at *1 (S.D. Miss. Sept. 11, 2016) (footnote omitted)).  Certainly, it is undisputed that Salsbury was not involved in or a witness to the Runyon Street murders.  The more rigorous disclosure obligations of Rule 26(a)(2)(B)(i)-(vi) therefore apply to him, as he is a witness who will "present evidence under Federal Rule of Evidence 702, 703, or 705" and who was "retained or specially employed to provide expert testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).

In this case, the defendants proffer Salsbury's testimony to establish that his dog picked up and tracked a human scent trail leading from the Runyon Street crime scene to the vicinity of the plaintiff's home.  Thus, he is offered to establish, based on a post-hoc assessment of the premises and surroundings, that there was a discernible connection between a person who was at both places, and who traversed a path from one location to the other.  Salsbury certainly was "specially employed" when he was summoned to the scene to attempt to locate a scent trail with his dog, for the purposes of advancing the criminal investigation and prosecution, which almost certainly was done at the behest of one or the other of the individual defendants, who were the lead investigators on the scene.  He is offered again here to express the same opinion proffering a purported connection between the plaintiff and the crime scene, solely for the purposes of advancing the defendants' position that the prosecution and conviction were justified, because the plaintiff committed the crime.  Salsbury's involvement in the case thus does not in any discernible way conform with the pattern of a treating physician who is called upon to render medical aid to a plaintiff, and who necessarily in the course of that service may derive some limited conclusions based on medical expertise about the nature or cause of the injuries.  Salsbury certainly was not requested to "treat" or to cater to the plaintiff; and his entire involvement in both proceedings was

solely intended to advance the litigation positions of the defendants in their attempts previously to prosecute the plaintiff, and now to evade liability for the allegedly unfounded prosecution and conviction.

The defendants were not justified in failing to produce a formal report by Salsbury, because he was "specially employed" to render an opinion in this case. However, even applying the more forgiving standard under Rule 26(a)(2)(C), the sketchy "disclosure" in this case still did not measure up, because it does not recite any basis for the opinion stated, or suggest any grounds for a finding that the dog was known to be reliable in tracking human scent trails. Federal courts have conditioned admission of dog handler testimony on production of "proof from controlled settings that a dog performs reliably in detecting [scent evidence]," which generally will suffice where the opposing party "has not contested that showing." *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014). Here, the defendants offer no hint of anything to support a finding of reliability. *C.f. ibid.* ("Investigator Moore gave extensive testimony regarding his and Marley's training and certification. He also testified regarding Marley's reliability rating of 100 percent in the field. The defendants did not proffer evidence to the contrary. Accordingly, the district court did not abuse its discretion in admitting evidence of Marley's alert.").

Finally, the defendants' invocation of "judicial estoppel" in an attempt to establish admissibility of Salsbury's testimony as a foregone conclusion is unfounded, because the plaintiff did not procure any "advantage" in the criminal proceeding by stipulating to the admission of Salsbury's testimony there.

"Judicial estoppel is an 'equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.'" *United*

*States v. Bates*, No. 17-5228, 2017 WL 5564676, at *2 (6th Cir. Nov. 20, 2017) (quoting *Mirando v. United States Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014)). "While declining to establish 'inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' the Supreme Court identified three factors that often guide a court in deciding whether to apply the doctrine: 'First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Ibid.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

In this case, the advantage was to the prosecution, not the plaintiff, because the evidence was offered solely by and for the benefit of the State's case. The plaintiff did not procure any "advantage" when he became resigned in apprehension of the weight of evidence arrayed against him at the bench trial to plead guilty, and subsequently was convicted. And he did not procure any "unfair advantage" by stipulating to the admission of Salsbury's testimony then but resisting it now, in the course of an entirely separate civil proceeding. There also is no inevitable deduction that either of the courts involved were "misled" merely because the State (presumably) complied with its discovery obligations in the previous case, leading the plaintiff to view a contest of the admissibility as futile, but the defendants here have not attempted in any way to comply with their disclosure obligations under the civil rules.

## 5. William Steiner

Steiner's opinion testimony concerning gunshot residue testing must be excluded for the same reasons discussed above, since he also failed to produce any proper expert report, and his involvement in the case was even more attenuated than Salsbury's, who at least personally was called upon to visit the crime scene soon after the murders occurred. Steiner's involvement was entirely post-hoc when materials collected from the scene by others were submitted to him for laboratory testing in the course of the investigation. The defendants were obligated under Rule 26(a)(2)(B) to produce a full report authored by Steiner.

The defendants contend that a "report" authored by Steiner was exchanged during discovery, and that the plaintiff even produced a copy of the same to the defendants, which the plaintiff's own gunshot expert cited in his report. But the supposed "report" to which the defendants' allude was nothing more than a form laboratory test sheet stating only that "Pants were sampled for the presence of Gunshot Residue on the right thigh and left thigh," and "Gunshot Residue was detected on both thighs." Forensic Services Report dated Jan. 9, 2008, ECF No. 156, PageID.7511. That perfunctory lab results sheet does not contain any indication of the information required in a proper 26(a)(2)(B) disclosure, such as the "basis and reasons for [and] the facts or data considered by the witness in forming [the opinion]," an identification of "any exhibits that will be used to summarize or support [the testimony]," "the witness's qualifications, including a list of all publications authored in the previous 10 years," "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," or "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

* * * * *

For all of these reasons, the plaintiff's motion to exclude the opinion testimony of the MDOC witnesses, police officers Herzog, Reizen and Salsbury, and laboratory technician Steiner will be granted.

B. Motion to Exclude Opinion Testimony by Dr. Lynne Schwarz and Dr. M. Judith Block

This motion initially raised challenges to the scope and admissibility of opinion testimony by two of the defendants' retained experts, Dr. Lynne Schwartz and Dr. M. Judith Block. However, in his reply the plaintiff asserts that, after considering the concessions stated in the defendants' response, he is satisfied that the parties have resolved their differences on the permissible scope of both witness's testimony with one exception: the plaintiff still objects to the expression of any opinion by Dr. Schwartz to the effect that "there was no evidence to suggest that Mr. Sanford was coerced" during his interrogation by defendant Russell. The plaintiff contends that the admission of any opinion on that topic would be improper because Schwartz admitted at her deposition that she did not attempt to develop any opinion on that point. Lynne Schwartz dep., ECF No. 137-6, PageID.5174 ("Q. Dr. Schwartz, you've already told me that one thing that you were not looking for in this evaluation is whether or not Mr. Sanford's confession was coerced, correct? A. That's correct."). Schwartz further conceded that she did not consider "what occurred during the course of [the] interrogation," or whether "the behavior of the officers . . . was coercive behavior," and her work also did not comprise any assessment of the plaintiff's "suggestibility as it relates to coercive interrogation tactics." *Id.* at PageID.5166-68.

The defendants contend, nevertheless, that Schwartz should be permitted to relate the "micro-opinion" that she expressed in a court-ordered competency evaluation report, where she stated that "there was no evidence to suggest that Mr. Sanford was coerced, either by physical or psychological means." Report of Competency Evaluation dated Dec. 4, 2007, ECF No. 153-8,

PageID.6894.  The defendants believe that opinion is admissible because Schwartz developed it "in the moment" and in the course of performing her court-ordered duty to evaluate the plaintiff. That is a curious position, since the defendants represent later in their brief that "Dr. Schwartz is not being offer[ed] to opine whether Sanford's confessions were coerced . . .[, but s]he is being offered to opine as to his mental capacities and intellect when he confessed and [whether] those would have an effect on his ability to voluntarily waive [his] Miranda [rights] or confess."  Defs.' Resp., ECF No. 153, PageID.6806.

Dr. Schwartz's opinion that there is "no evidence" that Sanford was subjected to a coercive interrogation or that his confession was coerced is inadmissible under Rule 702 because it is not relevant to any issue in the case, since Schwartz admits that she did not undertake any effort to fit that opinion to the particular facts at hand.  It is axiomatic that an expert's opinion is relevant under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), only if it is based on the actual facts of the case.  *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 529 (6th Cir. 2014) (Keith, J. dissenting) ("The "relevancy" prong of Rule 702 requires that an expert's theory adequately 'fit' the facts of the case.  Expert testimony that does not fit the facts does not relate to an issue in the case and, therefore, is not relevant.") (citing *Daubert*, 509 U.S. at 591); *see also Daubert*, 509 U.S. at 591-93 (requiring that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses).

Here, Schwartz admits that her statement that the plaintiff's confession and guilty plea were not coerced was based on no pertinent facts, because she did not consider any.  Therefore, the

Court will exclude any testimony by Dr. Schwartz suggesting that Sanford was "not coerced" in his interrogation or that there is "no evidence" of coercion.

C.  Motion to Exclude Opinion Testimony by Dr. Michael Welner and Mark Peter

### 1.  Dr. Michael Welner

It is undisputed that Dr. Michael Welner is a retained expert in the field of psychology for the defendants, but the defendants have conceded that they never disclosed any proper 26(a)(2)(B) report by him.  Instead, they disclosed a non-report which says essentially nothing, and expresses no opinion other than that Dr. Welner did not believe he could develop an opinion.  Following are excerpts of statements from the report produced by the defendants on September 7, 2018 (omitting the extensive tracts of exposition on the general existence and nature of the medical fields of psychology and psychiatry and the sorts of things practitioners of those arts tend to do):

> In addition to [the reports of the plaintiff's retained experts], I have reviewed numerous sources of information in the course of evaluating the matter and my review is ongoing.
>
> . . .
>
> My review of records does not yet allow me to conclude that Mr. Sanford did not have any connection to Mr. Smothers, or Mr. Davis.  I may yet come to that conclusion.  However, there are some areas that I have not sufficiently investigated.
>
> . . .
>
> I have not sufficiently resolved the question of why Mr. Sanford identified the four peers he did as perpetrators, or how each or all of them may link to Mr. Smothers or Mr. Davis. . .  How these people fit together or do not . . . require my closer scrutiny.
>
> . . .
>
> I may ultimately embrace a number of conclusions that plaintiff and plaintiffs' experts have offered.
>
> . . .

> Dr. Redlich makes numerous assertions in her background section. There are those that I would agree with. There are many I do not agree with, and would challenge for their scientific foundation. Some may be wholly irrelevant to Mr. Sanford, but I will reserve consideration of that for when I complete my review.
>
> . . .
>
> I will also more closely consider what aspects of Dr. Redlich's situational factors I agree with or disagree with when I have a fuller data set to work with.

Dr. Michael Welner aff. ¶¶ 2, 32, 34, 40, 54-55, ECF No. 140-3, PageID.5476-5485. None of those passages expresses any particular opinion, or the factual basis for one, or what methods were used to arrive at an opinion. At the October 16, 2018 hearing on the defendants' second round of motions for discovery sanctions and scheduling relief, defendants' counsel conceded that Dr. Welner had not produced a proper 26(a)(2)(B) report by the disclosure deadline:

> And we run into this roadblock with experts saying: You don't have these medical records. You don't have these educational records. You don't have plaintiff's dep. How in the world can I offer any type of opinions?
>
> There was a reluctance to author any type of opinions until they had a sufficient basis. We finally got down to, well, we had to paint or get off the ladder. And Dr. Welner agreed to say, okay, give me what you have assembled so far, knowing that it's going to be based on incomplete information, so we did.

Hearing Tr., ECF No. 127, PageID.4169. Plaintiff's counsel responded, reciting the history of the parties' dispute over expert disclosures, indicating that it was apparent from discussions she had with defendants' attorney that the defendants' experts had not even yet been retained, when counsel discussed the issue just three days before the discovery deadline:

> [I]f the issue was that [the defendants] needed more than two months to produce expert reports, why didn't they ask for an extension earlier? They asked for an extension the day that the reports were due. And they did not ask for an IME until the day the reports were due. That was the first time they asked for an IME.
>
> The reality, it seems to me, is that they didn't retain Dr. Welner. When I spoke with them three days before — and I hate getting to this level, but I think it's required here — when I spoke with defendants three days before the reports were due they had not retained a single expert. They have admitted that.

What happened is, they assumed that they would get an extension. They ignored the Court's deadline. And they didn't ask for an IME until the day that their reports were due. An IME is not a separate thing that you introduce and if the issue was that they needed more than two months to produce expert reports, why didn't they ask for an extension earlier? They asked for an extension the day that the reports were due. And they did not ask for an IME until the day the reports were due. That was the first time they asked for an IME.

They gave us — after the Court had already granted an extension, they gave us a placeholder report from Dr. Welner that contains not a single opinion. It actually says, "I may agree with your expert, I may not. I'm not going to tell you now." That's what the report says. It doesn't list the materials he reviewed. There has been no explanation offered for why, if Dr. Welner required an IME, the defendants didn't ask for one before the day that their reports were due.

*Id.* at PageID.4179-80. At the end of the hearing, the Court denied the defendants' request to extend discovery for the purpose of conducting a defense medical examination, because, based on the defendants' admitted failure to disclose any proper report by Dr. Welner, there would be no point in conducting discovery to inform an expert who could not testify at trial The Court observed:

That sort of dovetails into the request for a defense medical examination. And the reason for such a medical examination is to generate information that might be used by an expert with respect to damages or the issue of damages at trial. But because that expert deadline, that disclosure deadline has already occurred, I really don't see a point of allowing a medical examination just for basic information when the expert would not be able to testify, because there is no report that was furnished within the Court's deadlines.

*Id.* at PageID.4199. However, the Court briefly extended the expert disclosure deadline to September 7, 2018, and it extended the deadline for filing dispositive motions and motions challenging experts by two weeks, to November 30, 2018.

### 2. Mark St. Peter

Both the initial and supplemental expert disclosures by the defendant identified Mark St. Peter as an expert in the field of "phone forensics," but as to his report, each disclosure stated: "Cannot complete one at this time. Defendants anticipate conducting a forensic examination of

Vincent Smother's phone(s) during discovery." Expert Discl., ECF No. 135-2, PageID.5022. It appears to be undisputed that Mr. St. Peter was retained (or was meant to be retained) by the defendants to render some sort of opinion for the purpose of this litigation, but the defendants never served any expert report by Mr. St. Peter within the deadline set by the Court.

## 3. Discussion

The plaintiff argues in straightforward fashion that there is no excuse for the defendants' admitted failure to disclose any proper reports by Welner or St. Peter, and exclusion therefore is mandatory under Rule 37, since the plaintiff has been deprived of any meaningful opportunity to evaluate or challenge their opinions.

As to Dr. Welner, the defendants assert, without elaboration, that the report produced by them on September 7, 2018 satisfied the requirements of Rule 26(a)(2)(B), because Welner expressed numerous "opinions" in the report. A fair reading of the report, however, demonstrates otherwise. Dr. Welner candidly acknowledged in the report that he had no opinion on any matter relevant to this lawsuit.

The defendants do not dispute that the "report" by Dr. Welner included nothing in the way of exhibits or other information on which he purported to base the "opinions" that they highlight. With respect to St. Peter, the defendants contend that the late production should be excused because it was not discovered until Mr. Smothers's cell phone was examined by the defense on October 30, 2018 that "the phone would not power on," and that obstacle to examination of it obstructed the timely completion of the report. However, the defendants do not explain why the phone in question was not even examined by their expert until one day before discovery closed and more than a month after the extended deadline for production of expert disclosures had passed.

Dr. Welner and Mr. St. Peter unquestionably were retained experts who were required to produce reports under Rule 26(a)(2)(B). Neither did so. Dr. Welner's "affidavit" is an empty vessel and does not even express any pertinent opinion about the case, let alone any basis for one.

The defendants previously conceded on the record that Dr. Welner did not produce a proper report on time, because they assumed that the Court would allow more time. St. Peter never produced a report apparently because the defendants never bothered to have him look at the salient exhibits until the day before discovery closed. The plaintiff now is faced with the prospect of rebutting opinion testimony at trial by experts who did not disclose reports during the discovery period, and whom he cannot now depose because discovery has closed. For all of the same reasons noted above with respect to the "medical and psychological providers," the defendants' failure cannot be excused as either substantially justified or harmless. Therefore, the Court will grant the plaintiff's motion to exclude all testimony by Dr. Welner and Mr. St. Peter.

III.

For all of the witnesses identified in the plaintiff's three motions, the defendants have not satisfied their disclosure obligations under Federal Rule of Civil Procedure 26(a)(2). And they have not shown that their failure was substantially justified or harmless.

Accordingly, it is **ORDERED** that the plaintiff's motion to strike the testimony of the defendants' "unretained experts" (ECF No. 135) is **GRANTED**.

It is further **ORDERED** that the defendants may not offer any expert opinion testimony on any subject by any of the following: (1) the 28 persons listed as "Michigan Department of Corrections medical or psychological providers"; (2) the 20 persons listed as "MDOC medical and correctional staff"; (3) any witness identified under the heading of "Detroit Police Department Officers involved with Gang Intelligence," including, but not limited to Scott Herzog and Michael

Reizen; (4) Detroit police officer Christopher Salsbury; and (5) Detroit Police Department laboratory chemist William Steiner.

It is further **ORDERED** that the plaintiff's motion to exclude the opinion testimony by Dr. Lynne Schwarz and Dr. M. Judith Block (ECF No. 137) is **GRANTED IN PART**. The defendants may not offer any testimony by Dr. Schwartz suggesting that Devontae Sanford was "not coerced" in his interrogation or that there is "no evidence" of coercion. In all other respects, the motion is **DISMISSED** as moot.

It is further **ORDERED** that the plaintiff's motion to exclude the opinion testimony by Dr. Michael Welner and Mark St. Peter (ECF No. 140) is **GRANTED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: May 9, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on May 9, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI