UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAE SANFORD,

                 Plaintiff,                        Case Number 17-13062

v.                                           Honorable David M. Lawson

MICHAEL RUSSELL and JAMES TOLBERT,

                 Defendants.

_____/

## OPINION AND ORDER ON THE PARTIES' RENEWED MOTIONS *IN LIMINE*

This matter is before the Court on several renewed motions *in limine* that were filed by the parties after the conclusion of the defendants' interlocutory appeal. The case presently is set for trial on May 11, 2021, but in a recent conference the Court advised the parties that the case almost certainly could not be tried in person at that time, and that the Court was not inclined to go forward with a Zoom trial in mid-May, although the Court's position on whether to go forward with a virtual trial could change as experience with that option is gained within the district. Nonetheless, it is prudent to decide the motions now to help guide the parties' trial preparations.

I.

In their first motion, the defendants ask the Court to prevent the plaintiff from offering any evidence of a settlement the plaintiff reached in the Michigan Court of Claims in a case he filed against the State under the Wrongful Imprisonment Compensation Act, Mich. Comp. Laws § 691.1751, *et seq.*, seeking compensation for his nearly nine years of incarceration related to the claims of police misconduct alleged in this case. The defendants point out that the Act specifies that "[a]n award of compensation under this act is not a finding of wrongdoing against anyone," and "[a]n award of compensation under this act is not admissible in evidence in a civil action that

is related to the investigation, prosecution, or conviction that gave rise to the wrongful conviction or imprisonment." Mich. Comp. Laws § 691.1755(7). They also assert that the individual officer defendants in this case were not parties to the state court of claims action in which compensation was awarded, and they were not "asked for input" in those proceedings, so they had no opportunity previously to litigate the merits of the plaintiff's demand for compensation before the State elected to settle the claim. They further argue that evidence of the compromise of the claim is irrelevant to whether the individual defendants fabricated evidence or instigated any charging decision that resulted in a wrongful prosecution. And they assert that they would be unfairly prejudiced by the evidence.

The plaintiff responds that all of the defendants' arguments might have merit if the defendants were prepared to concede that the plaintiff did not commit the Runyon Street murders. However, since the defendants have made the plaintiff's supposed factual guilt the centerpiece of their defense strategy, the plaintiff argues that he is entitled to respond with contrary evidence tending to disprove their factual defense. Therefore, they seek to offer only a limited portion of the state court of claims record consisting of: (1) the State's admission in its answer filed in the court of claims case stating that "new evidence demonstrates that [Sanford] did not perpetrate the crimes and was not an accomplice or accessory to the acts that were the basis of the convictions," State of Mich. Ans. to Compl., ECF No. 368-3, PageID.19534, and (2) the entry of judgment in favor of the plaintiff and awarding him compensation, which per the statute was required to be supported by an affirmative finding of his innocence based on new evidence.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[E]vidence that is merely ancillary to evidence that bears directly on the issues

-2-

may be admissible," but such "evidence must at least be a step on one evidentiary route to the ultimate fact." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) (citations and quotations omitted).  All relevant evidence is admissible unless the Constitution, a federal statute, or another rule "provides otherwise."  Fed. R. Evid. 402.

Evidence Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "[T]he balancing test of Rule 403 . . . [is] strongly weighted toward admission."  *Hazelwood*, 979 F.3d at 411-12. "[T]he risk of unfair prejudice [has been] defined as the 'undue tendency to suggest a decision based on improper considerations,'" thus improperly tempting the jury to "reach[] a verdict based on emotions instead of evidence."  *Id.* at 412 (quoting *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018)).

Evidence of the plaintiff's innocence of the underlying crime plainly is relevant to rebut the factual and legal defenses that have been raised and maintained by the defendants throughout this litigation.  As long as the defendants insist, as they do, that all available evidence of the plaintiff's *guilt* must be considered by the jury, then so must any and all available evidence of his *innocence*.

The defendants maintain, however, that it would be unfairly prejudicial to admit evidence of the settlement because it would be unreasonable to expect a jury to understand fine legal distinctions between the legal standards for an award of compensation under the state compensation statute and the merits of the plaintiff's constitutional claims in this case, and there would be too much temptation for the jury to presume that the defendants already had been adjudged liable by the State, and therefore also should be held liable by the jury in this case based

on the same allegedly wrongful incarceration.  Evidence Rule 403 requires a comparison of any unfair prejudice the opponent identifies and the evidence's probative value, which is contextual. "[U]nfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force."  *Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006).  So the probative value of evidence can be more or less weighty depending on whether a fact is genuinely contested.  *See Old Chief v. United States*, 519 U.S. 172, 184-85 (1997).

It is well settled that evidence of innocence is relevant to both liability and damages in any wrongful prosecution case where the factual premise of actual innocence remains in dispute.  *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014).  Conversely, the absence of a live dispute on that aspect of the case may nullify the relevance, and the defendants' position would be well taken *if they were willing to concede the plaintiff's factual innocence*.  However, not only are the defendants not willing to stipulate to the plaintiff's innocence of the underlying crime, they doggedly have insisted throughout this litigation that the plaintiff actually committed or aided the commission of the Runyon Street murders.  Moreover, they presented a motion to develop even further supposed evidence of his guilt.  And they repeatedly have moved to dismiss the claims on the ground that the plaintiff suffered no damages as result of his guilty plea, he was never "exonerated" of the crime for which he was convicted, and, even now, the criminal proceedings in state court never have "terminated in his favor," precluding any claims by him via section 1983. The probative value of competing evidence suggesting his innocence, therefore, is not "substantially outweighed" by the defendants' stated prejudice grounds.

The Seventh Circuit's decision in *Parish v. City of Elkhart*, 702 F.3d 997, 1002 (7th Cir. 2012), dramatically illustrates the hazard of endorsing the defendants' flawed argument, which in

that case required reversal and remand for a new trial, after an improperly skewed presentation of evidence on factual innocence resulted in an unconscionably paltry damage award.  There, as here, the defendants sought to present to the jury a slanted record consisting exclusively evidence of the plaintiff's supposed factual guilt of the underlying crime, while attempting (there, with success) to exclude compelling contrary evidence of his innocence.  The Seventh Circuit held that the plaintiff's evidence of innocence was not unfairly prejudicial and was highly probative to rebut the evidence offered to prove his supposed guilt, and the exclusion of the plaintiff's contrary evidence was an abuse of discretion.

The exclusionary language in the state statute that the defendants cite is not controlling.  It is well settled, of course, that "state statute[s] do[] not govern the admissibility of [evidence] in federal courts. The Federal Rules of Evidence govern those decisions."  *Smith v. County of Lenawee*, No. 09-10648, 2011 WL 1166661, at *1 (E.D. Mich. Mar. 28, 2011).  In fact, "the federal rules themselves provide that they 'apply generally to civil actions and proceedings.'"  *Ibid.* (quoting Fed. R. Evid. 1101(b) ("These rules apply [in] civil cases and proceedings.")).  Thus, the evidentiary strictures of the State's Wrongful Imprisonment Compensation Act have no bearing on the evidentiary question that presently is before the Court.

In fact, the Federal Rules of Evidence expressly contemplate the admission of exactly the sort of factual conclusions expressed in statements by public agencies that are at issue here, where an agency has, after investigation, reached factual findings pertinent to the elements of a claim later litigated in federal court.  Evidence Rule 803(8) provides that the rule of hearsay does not bar from evidence any "record or statement of a public office if . . . it sets out . . . in a civil case . . . factual findings from a legally authorized investigation [and] the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid.

803(8).  Here, the admission in the answer of the State of Michigan, made after its investigation of the wrongful conviction claims, is the factual finding of a public agency that directly supports the plaintiff's position that he did not commit the murders and rebuts the defendants' evidence that is offered to prove that he did commit the murders.  *See Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, No. 17-11130, 2020 WL 6793335, at *12 (E.D. Mich. Nov. 19, 2020).

The judgment entered in the state court of claims also directly rebuts the defendants' repeatedly asserted position that the state court criminal proceeding never concluded in his favor, because the state law expressly requires the court of claims to find both that "[t]he plaintiff's judgment of conviction *was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty*," and that "*[n]ew evidence demonstrates that the plaintiff did not perpetrate the crime* and was not an accomplice or accessory to the acts that were the basis of the conviction."  Mich. Comp. Laws § 691.1755(1)(b), (c) (emphasis added). Thus, the record of judgment supports the plaintiff's position that the charges were dismissed — once and for all — because he didn't commit the crime, not merely because, as the defendants contend, the state prosecutor elected, for unknown reasons, merely to defer the fight to another day.

The admissions by the State's agents charged with investigating the claims of wrongful conviction therefore are highly relevant to the plaintiff's proofs of his actual innocence, the evidence is not substantially outweighed by unfair prejudice, and the evidence is not barred by the state statute cited by the defendants.

## II.

Next, the defendants move for exclusion of any evidence that the Michigan State Police sought perjury charges to be filed against defendant James Tolbert as a result of his false testimony

at Sanford's preliminary examination and trial about the provenance of a sketch of the murder scene. During an October 2015 reinvestigation of the Runyon Street murders by the Michigan State Police, the assigned MSP investigator interviewed Tolbert, and it was during that interview that Tolbert admitted that he (not Sanford, as he previously had testified) had drawn the outline of the room where the bodies were found, and Sanford only drew the bodies. After that interview, the MSP investigator drafted a report recommending perjury charges be brought against Tolbert. However, no such charges ever were pursued by the Wayne County prosecutor.

The defendants contend that whether or not perjury charges were sought by the MSP has no bearing on the culpability of Tolbert's conduct during the investigation of the Runyon Street murders, or his "interactions with Sanford" during his interrogation where the incriminating sketch of the murder scene was created, since all of that conduct occurred before Tolbert's allegedly false trial testimony. The defendants also argue that the evidence would unfairly prejudice them by tempting the jury to conclude that Tolbert lied about the sketch, even though he never formally was charged or convicted.

But the plaintiff says that he does not intend to offer the evidence to show how the MSP felt about Tolbert's conduct. Instead, they want to show Tolbert's reaction when he learned that perjury charges were recommended, believing that his subsequent conduct demonstrates his awareness of a deliberate falsehood. The plaintiff points to Tolbert's deposition testimony in which he asserted that he first became aware that his 2010 testimony about the crime scene sketch was false in late 2015, when a reporter called him to ask for comments on the MSP investigator's request for a perjury warrant. Tolbert has characterized his 2010 testimony as a "horrendous mistake," but the plaintiff wants to offer evidence that Tolbert "did nothing" in response to the possibility of charges in 2015, and that he did not then come forth with any innocent explanation

of his supposed "mistake," or take any action to rectify the consequences of his purportedly innocent error. The plaintiff contends that Tolbert's silence in the face of potential perjury charges is, like other evidence of his conduct during the 2015 investigation, relevant to show both the intentionality of his conduct and his consciousness of guilt.

Evidence that Tolbert did nothing in 2015 when confronted with the possibility of perjury charges for admittedly false testimony about the crime scene that was given in 2010 is, as the Court previously has ruled, relevant and admissible to show both the intentionality of his conduct relating to the crime scene sketch and his consciousness of his unlawful conduct. As the Court noted in its opinion denying the defendants' motion for summary judgment: "Tolbert now candidly admits that he drew the layout of the sketch and Sanford only drew the bodies on the sketch Tolbert created. Russell admits he was present when that was done. Both claim that they were 'mistaken' in their recall of how the sketch was made. Tolbert's testimony makes it seem unlikely in the extreme that either of them actually 'forgot' how this 'critical' piece of evidence came into existence." Op. & Order, ECF No. 307, PageID.14907-908. The Court previously also considered evidence that, at the end of the MSP interview, Tolbert attempted to destroy or abscond with a duplicate of the crime scene sketch that he was prompted to draw. The Court held that evidence was relevant to demonstrate his consciousness of guilt, and its admission would not unfairly prejudice the defendants. Order re. Mots. *in limine*, ECF No. 329, PageID.16088.

Similarly, as the Court also previously has ruled, evidence that the defendant opted to do nothing rather than to make some effort to undo the consequences of his evidence fabrication and false swearing bolsters inferences favorable to the plaintiff about the intentionality of his conduct and his consciousness of guilt. *See* Order re Mots. *in limine*, ECF No. 333, PageID.16105-106 ("[E]vidence that the defendants were aware of Smothers's confessed involvement in the murders

and chose to do nothing, notwithstanding the admission by Tolbert that the lack of follow up was an 'extraordinary investigative lapse,' is relevant to establish both the willfulness of their conduct in procuring the wrongful conviction and their consciousness of their guilt for the violations of the plaintiff's rights.").

The cases cited by the defendant do not support their arguments because, as the plaintiff correctly points out, both involved attempts by a party to impeach the credibility of a hostile witness with evidence of allegedly improper but entirely unrelated conduct for which the witness never formally was charged or convicted.  *See United States v. Madden*, 482 F.2d 850, 852 (8th Cir. 1973) ("It has consistently been held that it is impermissible for a party to attempt to affect the credibility of a witness by showing that he has been accused of, charged with, or arrested for a crime of which he has not been found guilty."); *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) ("The well-established, general rule is that a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges.").  Here, the evidence is not offered simply to attack credibility by means of an uncharged crime.  Instead, it is direct evidence about Tolbert's state of mind regarding his own conduct and the underlying events involved in this case.  Evidence may be offered that Tolbert maintains that he "first became aware" that he had learned that his 2010 testimony was false when he was informed of possible perjury charges in 2015.  It appears to be undisputed that, despite that prospect, he did nothing to rectify the consequences of his supposedly "honest mistake," nor did he come forward, at that time, or any time soon thereafter, with any innocent explanation of his conduct.  There is nothing improper in the admission of that direct evidence for the straightforward purpose of proving that, since at least 2010, and perhaps long before, the defendant knew that he had done wrong, but he chose to do nothing about his wrongdoing, apparently because he hoped that the matter would not be pursued further.

-9-

The defendants also argue that the evidence is barred by Evidence Rule 404(b) because it will be offered to attack the defendant's character via the impermissible inference that he acted consistently with that bad character trait. But Rule 404(b) plays no role here. The evidence concerns conduct that is part and parcel of the underlying events in the case, which is admissible under the generally recognized *res gestae* exception to Rule 404(b), because it does not concern extrinsic and unrelated conduct offered solely to prove character or credibility. *See United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018). The recommendation of perjury charges is the premise that sets the stage for Tolbert's reaction to that possibility and is part of a narrative "the telling of which is necessary to complete the story of the charged offense." *Ibid.*

In proper context, the evidence of the MSP's recommendation of perjury charges against Tolbert is admissible.

### III.

The plaintiffs move to exclude the expert testimony of the defendants' unretained experts, Dr. Lynne Schwartz and Dr. Judith Block. The plaintiff previously had filed a motion challenging the relevance and reliability of the expert opinions by those witnesses under Federal Rule of Evidence 702. By the time that motion fully was briefed, the parties represented to the Court that they had resolved most of their differences about the scope and content of the proposed testimony. The Court then ruled on the remaining live issue that was presented, holding that Dr. Schwartz's opinions that the plaintiff was "not coerced" during the interrogation and that there was "no evidence of coercion" would be excluded because Schwartz had not been retained to render any opinion on those topics as part of her evaluation, and she admitted that she had made no effort to develop such conclusions. Op. & Order re: Mots. to Exclude Experts, ECF No. 298,

PageID.14224-225.  The plaintiff, however, had reserved his right to file a motion *in limine* challenging the relevance of Schwartz's remaining testimony solely on the basis of general relevance to the issues in the case, and he now has done so.

Dr. Schwartz was retained to evaluate the plaintiff's mental state during the criminal proceedings after his 2007 arrest for the Runyon Street murders.  She was asked to opine on his capacity knowingly to waive his *Miranda* rights during the interrogation, his competency to stand trial, and whether his mental status supplied any ground for the assertion of an insanity defense. Schwartz produced an evaluation that included numerous clinical observations of Sanford's mental functioning and capacity, and she concluded according to the pertinent standards under Michigan law that he had the capacity validly to waive his rights, was competent to stand trial, and was not legally insane.  Examples of numerous clinical observations recorded by Schwartz were itemized by the defendants in their opposition to the plaintiff's motion.

Dr. Judith Block was retained to conduct similar evaluations during separate criminal proceedings on other charges, which occurred after the plaintiff's 2008 conviction for the Runyon Street murders.  There is no dispute that the charges and proceedings in that case were unrelated to the underlying criminal proceedings in this case, which already had concluded before Dr. Block was retained to render any opinion about the plaintiff's mental state.

The plaintiff argues that Dr. Schwartz's and Dr. Block's opinions are irrelevant to the claims in this case because he "does not intend to argue to the jury that he was incompetent to stand trial, incompetent to waive his *Miranda* rights, or that he should have qualified for the legal insanity defense," and he "does not dispute [that] he was competent for those purposes."  In his reply brief, the plaintiff further insists that the defendants have "misconstrued" the basis of his coerced confession claim, and he now asserts that does not intend to argue at trial that the

circumstances of the interrogation were coercive based on any peculiar mental infirmity of his, and instead he will litigate the coerced confession claim solely on the premise that the defendants "used overwhelming coercion — including by interrogating Sanford for many hours, overnight, without a parent or attorney present, showing Sanford disturbing crime scene photos of deceased bodies, falsely telling Sanford there was blood on his shoes, and promising Sanford he could go home if he hurried up and confessed — to overbear the will of then-14-year-old Sanford and get him to falsely confess to a crime he did not commit."  Plf. Reply, ECF No. 372, PageID.19610.

The plaintiff contends that because he will not argue that he was legally insane and will not assert at trial that he had any particular psychological infirmity that made him unfit to waive his rights, all of the testimony about whether he was legally "insane," or "competent," or mentally fit to understand his rights would be irrelevant.  He also contends that the testimony would confuse the jury and waste their time by presenting volumes of testimony about the plaintiff's mental condition that are not pertinent to any of the circumstances that he claims were coercive.  The plaintiff further argues that Dr. Block's opinion — regardless of content — is irrelevant for the additional reason that her examination was conducted in 2009, after the conclusion of the underlying criminal proceedings at issue here, so her conclusions are so temporally remote that they cannot have any valid bearing on the plaintiff's mental status at the time of his arrest two years earlier, in 2007.

The defendants respond that testimony by both doctors about Sanford's mental condition is relevant to their defense against the plaintiff's specific allegations in the complaint that the defendants "exploited" his "mental impairment."  They point to paragraph 166 of the complaint, where the plaintiff alleged that defendants Russell and Tolbert:

> knew [that the plaintiff] was mentally impaired, they intentionally exploited his mental illness by, among other things, coercing and/or manipulating him to be

interrogated over long periods of time; to sign and initial documents he could neither read nor understand; to believe that he would be allowed to go home when this was evidently not the case; and, to confess to a crime that he never committed.

Compl. ¶ 166, ECF 1, PageID.43.  The defendants argue that in order to meet this allegation that they exploited the plaintiff's mental infirmity, they must be allowed to present relevant expert testimony that the plaintiff had no significant mental deficiency or psychological impairment when he was interrogated by the defendants.

The defendants' confusion about the basis of the plaintiff's coerced confession claim is understandable in light of the overall context of the factual basis recited in the complaint, which includes an allegation that the defendants "exploited" his "mental impairment."  However, the particular allegation on which the defendants' response focuses was stated as part of the basis for the plaintiff's claim in Count IV of his complaint, which alleged that the defendants had violated his rights under the American With Disabilities Act.

On February 28, 2019, the Court entered an order dismissing the ADA claim with prejudice against the individual officers.  The City of Detroit previously had been dismissed from the case entirely when the Court ruled that all of the plaintiff's causes of action were pre-petition claims that arose before the City's bankruptcy, and he therefore was foreclosed from proceeding against the City.  Thus, after the Court's early dispositive ruling and the dismissal of the ADA claim against the remaining defendants, Count IV no longer is a live cause of action for trial.  Moreover, the plaintiff now specifically disclaims any reliance on any supposed peculiar mental infirmity or defect as a basis for his surviving coerced confession claim.  Thus cabined, Sanford's coerced confession case no longer presents any factual controversy that could be resolved by expert testimony about his mental status or psychological capacity at the time of his interrogation by the defendants.

The plaintiff now asserts that he intends to advance his claim of coerced confession solely on the basis that the circumstances of his youth, the exclusion of any adult parent or guardian during questioning, the duration and intensity of the interrogation, the shocking nature of the crime scene photos shown to him, and deceptive representations by the defendants that the plaintiff could "go home" if he confessed, and that blood evidence had been found on his clothing, all contributed to create a coercive atmosphere that compelled him falsely to confess.  Most of the pertinent facts such as the duration of the questioning, the plaintiff's age, and the absence of a parent or guardian are undisputed.  The parties do still dispute whether the defendants made certain "deceptive" representations during the questioning.  But the jury's deliberations about whether the plaintiff was coerced will not depend on any assessment of his particular psychological makeup, according to the plaintiff's presently stated theory of the case.  Dr. Schwartz's opinions and observations about the plaintiff's mental functioning and capacity therefore have no relevance to the case that the plaintiff says he will present to the jury.  Dr. Block's 2009 evaluation was in any event too temporally remote to have any bearing on the plaintiff's mental state in 2007.

The Court previously ruled that the evidence adequately sustained the coerced confession claim where the plaintiff's youth, the absence of a parent or guardian, the extended duration of the questioning, and illusory promises allegedly made by the defendants, together could be found under the clearly established rules of decision to create a coercive environment for custodial questioning.  The Court also noted in its prior ruling that the plaintiff had advanced evidence of his particular mental infirmity as contributing to his case.  He evidently now has abandoned any reliance on evidence about his individual psychological makeup to sustain the coerced confession claim.  Such evidence, however, was not essential to the Court's ruling on the motion for summary judgment, and its abandonment does not give ground to question the viability of the coerced

-14-

confession cause of action as it now has been framed for trial.  *See Harris  v.  Bornhorst*, 513 F.3d

503, 512 (6th Cir. 2008) ("[A]ny reasonable Case prosecutor . . . would   have   known,   after

listening  to the tape of  the confession, that it  was involuntary as a matter of law and thus

untrustworthy.  First, . . . any waiver of *Miranda* rights was rendered involuntary by Harris's age,

lack of any previous criminal history or experience, and physical separation from his mother, in

addition to the 'intensity of the interview' conducted by Vaughn.  More important, the techniques

used by Vaughn in questioning a twelve-year-old child were coercive, irrespective of the

effectiveness of the *Miranda* warning."); *United States v. Siler*, 526 F. App'x 573, 576 (6th Cir.

2013) (re: coercive effect of illusory promises).

The testimony of the defendants' expert psychological examiners is not relevant to rebuttal

of any portion of the factual basis for the plaintiff's coerced confession claim that will be presented

to the jury.  However, if the plaintiff offers evidence of a mental defect as a basis for his false

confession claim, then the defendants may ask the Court to revisit this ruling.

IV.

The evidence of the State of Michigan's admissions and acknowledgements in the

settlement of the Court of Claims case are not inadmissible for any of the reasons cited by the

defendants in their motion *in limine*.  Evidence that perjury charges were sought against defendant

James Tolbert for his testimony against the plaintiff in the state criminal case is admissible for the

limited purposes cited by the plaintiff.  And evidence to be offered by the defendants' expert

psychological examiners is not relevant to any issues presently outstanding in the case.

Accordingly, it is **ORDERED** that the defendants' motions *in limine* (ECF No. 362, 363)

are **DENIED**.

It is further **ORDERED** that the plaintiff's motion *in limine* (ECF No. 364) is **GRANTED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   March 31, 2021