UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAE SANFORD,

      Plaintiff,

v.

MICHAEL RUSSELL and JAMES TOLBERT, in
their official and/or individual capacities,
jointly and severally,

      Defendants.

Case No. 17-cv-13062
Hon. David M. Lawson
Mag. Judge R. Steven Whalen

> **DEFENDANTS' MOTION
> FOR RECONSIDERATION OF
> OR RELIEF FROM ORDER
> ECF NO. 393**

_____

**NEUFELD SCHECK & BRUSTIN, LLP**
By: Emma Freudenberger
    Nick Brustin
    Bettina Roberts
    Amelia Green
    Meghna Philip
    Len Kamdang
    Julian Clark
*Attorneys for Plaintiff*
99 Hudson Street, 8th Floor
New York, New York 10013
P: (212) 965-9081
F: (212) 965-9084
E: emma@nsbcivilrights.com
   nick@nsbcivilrights.com
   bettina@nsbcivilrights.com
   amelia@nsbcivilrights.com
   meghna@nsbcivilrights.com
   len@nsbcivilrights.com

**CITY OF DETROIT LAW DEPARTMENT**
By: Jerry L. Ashford (P47402)
    Krystal A. Crittendon (P49981)
    Charles Raimi (P29746)
*Attorneys for Defendants*
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-3089
F: (313) 224-5505
E: ashfj@detroitmi.gov
   critk@detroitmi.gov
   raimic@detroitmi.gov

GOODMAN HURWITZ & JAMES, P.C.
By: William H. Goodman (P14173)
    Julie H. Hurwitz (P34720)
    Kathryn Bruner James (P71374)
    Huwaida Arraf (NY 4707220)
*Attorneys for Plaintiff*
1394 East Jefferson Avenue
Detroit, Michigan 48207
P: (313) 567-6170
E: bgoodman@goodmanhurwitz.com
   jhurwitz@goodmanhurwitz.com
   kjames@goodmanhurwitz.com
   harraf@goodmanhurwitz.com

SEWARD HENDERSON PLLC
By: T. Joseph Seward (P35095)
    Kali M. L. Henderson (P76479)
    Michael A. Knoblock (P77544)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com
   khenderson@sewardhenderson.com
   mknoblock@sewardhenderson.com

---

### DEFENDANTS' MOTION FOR RECONSIDERATION OF OR RELIEF FROM ORDER ECF NO. 393

Defendants, **MICHAEL RUSSELL** and **JAMES TOLBERT**, only, by and through their undersigned counsel, and pursuant to Local Rule 7.1(h) and Federal Rule of Civil Procedure 60(b), submit the following as their Motion for Reconsideration of Order ECF No. 393. In support of said motion, the defendants rely on the arguments raised in the attached brief.

2

Respectfully submitted,

**CITY OF DETROIT LAW DEPARTMENT**

/s/ Charles Raimi
Charles Raimi (P29746)
*Attorneys for Defendants*
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-3089
F: (248) 733-3633
E: raimic@detroitmi.gov

**SEWARD HENDERSON PLLC**

/s/ T. Joseph Seward (P35095)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com

Dated: April 13, 2021

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVONTAE SANFORD**,

     Plaintiff,

v.

**MICHAEL RUSSELL** and **JAMES TOLBERT**, in
their official and/or individual capacities,
jointly and severally,

     Defendants.

Case No. 17-cv-13062
Hon. David M. Lawson
Mag. Judge R. Steven Whalen

> **BRIEF IN SUPPORT OF
> DEFENDANTS' MOTION
> FOR RECONSIDERATION OF
> OR RELIEF FROM ORDER
> ECF NO. 393**

_____

**NEUFELD SCHECK & BRUSTIN, LLP**
By: Emma Freudenberger
    Nick Brustin
    Bettina Roberts
    Amelia Green
    Meghna Philip
    Len Kamdang
    Julian Clark
*Attorneys for Plaintiff*
99 Hudson Street, 8th Floor
New York, New York 10013
P: (212) 965-9081
F: (212) 965-9084
E: emma@nsbcivilrights.com
   nick@nsbcivilrights.com
   bettina@nsbcivilrights.com
   amelia@nsbcivilrights.com
   meghna@nsbcivilrights.com
   len@nsbcivilrights.com

**CITY OF DETROIT LAW DEPARTMENT**
By: Jerry L. Ashford (P47402)
    Krystal A. Crittendon (P49981)
    Charles Raimi (P29746)
*Attorneys for Defendants*
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-3089
F: (313) 224-5505
E: ashfj@detroitmi.gov
   critk@detroitmi.gov
   raimic@detroitmi.gov

**GOODMAN HURWITZ & JAMES, P.C.**
By: William H. Goodman (P14173)
    Julie H. Hurwitz (P34720)
    Kathryn Bruner James (P71374)
    Huwaida Arraf (NY 4707220)
*Attorneys for Plaintiff*
1394 East Jefferson Avenue
Detroit, Michigan 48207
P: (313) 567-6170
E: bgoodman@goodmanhurwitz.com
   jhurwitz@goodmanhurwitz.com
   kjames@goodmanhurwitz.com
   harraf@goodmanhurwitz.com

**SEWARD HENDERSON PLLC**
By: T. Joseph Seward (P35095)
    Kali M. L. Henderson (P76479)
    Michael A. Knoblock (P77544)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com
   khenderson@sewardhenderson.com
   mknoblock@sewardhenderson.com

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION OF
OR RELIEF FROM ORDER ECF NO. 393**

# TABLE OF CONTENTS

Index of Authorities ................................................................................. iv

Issues Presented ..................................................................................... vi

Most Controlling Authority ...................................................................... vii

Introduction ............................................................................................1

Governing Standards................................................................................3

Law and Analysis.....................................................................................5

## Index of Authorities

**Cases**

*FDIC v. Homestead Mortg. Co.*,
   No. 04-74842, 2011 WL 717456 (E.D. Mich. Feb. 22, 2011) .............................3

*Ford Motor Co. v. Great Domains.com, Inc.*,
   177 F. Supp. 2d 628 (E.D. Mich. 2001) ...............................................................4

*Jordan v. Paccar, Inc.*,
   97 F.3d 1452 (6th Cir. 1996) ................................................................................9

*Little v. Yeutter*,
   984 F.2d 160 (6th Cir.1993) ................................................................................2

*Mote v. City of Chelsea*,
   391 F. Supp. 3d 720 (E.D. Mich. 2019) ...............................................................7

*Mote v. Washtenaw Cty. Rd. Comm'n*,
   No. 19-1864, 2019 WL 7834248 (6th Cir. Oct. 10, 2019)....................................7

*Ososki v. St. Paul Surplus Lines Ins. Co.*,
   162 F. Supp. 2d 714 (E.D. Mich. 2001) ...............................................................3

*Pelichet v. Gordon*,
   No. 18-cv-11385, 2020 WL 1083786 (E.D. Mich. Mar. 6, 2020) ........................3

*Yuba Nat. Res. Inc v. United States*,
   904 F.2d 1577 (Fed. Cir. 1990) ...........................................................................4

**Rules**

E.D. Mich. LR 7.1(h)(3) ........................................................................................3, 5

Federal Rule of Civil Procedure 26 .........................................................................8

Federal Rule of Civil Procedure 60(b).................................................................4, 5

Federal Rule of Civil Procedure 60(b)(1) ...........................................................3, 4

Federal Rule of Civil Procedure 60(b)(2) ................................................................3, 4

Federal Rule of Civil Procedure 60(b)(3) ...................................................... 3, 4, 8, 9

Federal Rule of Civil Procedure 60(b)(4) ...................................................................4

Federal Rule of Civil Procedure 60(b)(5) ...................................................................4

Federal Rule of Civil Procedure 60(b)(6) ..............................................................3, 4

## ISSUES PRESENTED

Whether this Court should alter its decision in ECF No. 393 because the result is an unjustified sanction that denies the defendants a dispositive defense and is based on factual errors.

The defendants answer,                    "*yes.*"

## MOST CONTROLLING AUTHORITY

Local Rule 7.1(h)

Fed. R. Civ. P. 60(b)

## INTRODUCTION

It is clear the Court believes defense counsel was not diligent in procuring necessary discovery and dishonest with the Court. The defendants now ask the Court to reconsider both of those beliefs because they are founded on an oversight of the plain facts in the record. The decision that resulted from these oversights deprives the defendants of a potentially dispositive defense and leaves open the very real possibility that any settlement or judgment for the plaintiff will be procured by fraud perpetrated by the plaintiff, not defendants.

Depriving the defendants of this defense based on their counsel's alleged procedural errors is both palpable error and an abuse of discretion considering (1) the level of exposure in this case, (2) the critical importance of the evidence at issue, (3) that there is no prejudicial delay in the trial due to the COVID-19 pandemic, (4) that the defendants brought this issue to the Court's attention (for the second time) on January 3, 2020, and again on June 24, 2020, and had they been able to proceed with the testing, it would have been completed by now.  Finally, any delay was not the fault of the individual defendants or the City of Detroit.

Detroit's population is amongst the poorest of any big City in America.[1] Because the City is obliged by union contract to indemnify the defendants, every

---

[1] Detroit's population previously ranked as the poorest but following the 2020 census is now ranked the second poorest, rising above only Cleveland. *Cleveland overtakes Detroit as poorest big city in U.S., census finds,* The Detroit News (September 17,

1

dollar paid in settlement or judgment will come out of the City's general fund.  That will be one less dollar the City can spend on public health and safety, blight removal, and other critically important public services for which the City already has inadequate resources. To the extent the Court believes the "City" should be "punished" for counsel's alleged procedural errors, the "punishment" will be inflicted on the City's residents.

Inflicting such punishment on the City's residents clearly does not fit the alleged "crime" here. This case involves events that transpired a number of years ago, and involves law enforcement agencies (Wayne County and Michigan State Police) that have been, at best, difficult to deal with. In view of the many hurdles in unearthing the facts, we believe the City's counsel has been diligent.  But even if counsel could have unearthed this evidence more quickly, and in a fashion more to the Court's liking, any alleged delay has not prejudiced plaintiff because of COVID.

The City is not asking for "sympathy." The City is asking the Court to exercise its discretion in light of the facts before it, and consistent with the Sixth Circuit's "longstanding policy that favors disposition of cases on their merits."  *E.g. Little v. Yeutter,* 984 F.2d 160, 162 (6th Cir.1993) (reversing dismissal for failure to prosecute). Although this Court did not enter a judgment against the City, the Court's

---

2020)          https://www.detroitnews.com/story/news/local/detroit-city/2020/09/17/
cleveland-overtakes-detroit-poorest-big-city-u-s-census/3476269001/

ruling may well result in the City paying millions of dollars it should not pay. If any punishment is warranted, which the City denies, sanctions are more than adequate.

The defendants ask the Court to reconsider its opinions under Federal Rule of Civil Procedure 60(b)(1), (2), (3) and (6) and E.D. Mich. LR 7.1(h)(3).

## GOVERNING STANDARDS

### *Reconsideration*

Motions for reconsideration are governed by E.D. Mich. LR 7.1(h)(3), which states:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

"A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *FDIC v. Homestead Mortg. Co*., No. 04-74842, 2011 WL 717456, at *1 (E.D. Mich. Feb. 22, 2011) (quoting *Ososki v. St. Paul Surplus Lines Ins. Co*., 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001)) (attached as Exhibit 1, *FDIC v. Homestead Mortg. Co.*). "A motion for reconsideration should not be used liberally to get a second bite at the apple, but should be used sparingly to correct actual defects in the court's opinion." *Pelichet v. Gordon*, No. 18-cv-11385, 2020 WL 1083786, at *3 (E.D. Mich. Mar. 6, 2020) (citations omitted) (attached as

3

Exhibit 2, *Pelichet v. Gordon*); see also *Ford Motor Co. v. Great Domains.com, Inc*., 177 F. Supp. 2d 628 (E.D. Mich. 2001) (partially granting motion for reconsideration challenging court's legal analysis).

Finally, and most important to this motion, "the decision whether to grant reconsideration lies largely within the discretion of the Court." *Yuba Nat. Res. Inc v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

### *Relief from Order*

Federal Rule of Civil Procedure 60(b) provides that a court, "[o]n motion and just terms" can relief a party from a "final judgment, order, or proceeding" for 6 different reasons. Fed. R. Civ. P. 60(b)(1)-(6). These grounds include "mistake, inadvertence, surprise, or excusable neglect;" "fraud…, misrepresentation, or misconduct by an opposing party;" and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (3), and (6).

## LAW AND ANALYSIS

This Court has denied the defendants an opportunity to present a proper and likely dispositive defense with both of its recent holdings in ECF No. 393 and ECF No. 394. The defendants now ask the Court to reconsider its decision in ECF No. 393 under E.D. Mich. Local Rule 7.1(h)(3) and/or grant relief from the order under Rule 60(b).

Moreover, the DNA testing sought by the defendants is currently being performed by the MSP at the direction of the Wayne County Prosecutor's office. [Exhibit 3, Declaration of T. Joseph Seward]. Defense counsel is sharing this information in effort to be fully upfront with the Court. The results of this test should have an impact on this case and should be considered by the Court. The defendants request is therefore limited to asking the Court to reconsider the addition of the necessary experts to present this evidence.

### A.  Newly realized DNA evidence

In ECF No. 393, this Court held that the defendants would not be granted additional limited discovery to explore the new evidence that found a strong probability that a victim's DNA is on the plaintiff's tennis shoes. [ECF No. 393, PageID.19851] This Court denied the defendants request because their motion was "based on false premises and inaccurate information, and they have not shown good cause or that their disclosure failures were harmless or substantially justified." [ECF

5

No. 393, PageID.19851]. That holding was palpable error because the record demonstrates the motion was none of these things.

The defendants' motion was filed in pursuit of their defense that Mr. Sanford is guilty and is lying when he says he was never inside the home where the murders took place, and that the defendants provided him with the details contained in his confessions. The Court's opinions are critical of this defense to such an extent that it appears the Court is limiting the defendants' ability to assert it by not allowing them to pursue highly relevant evidence and allow the plaintiff to introduce irrelevant evidence to counter it. Yet, this defense is only logical given that the Wayne County Prosecutor's office stated very publicly from the outset, to both to the press and in response to the plaintiff's subpoena, that case remains open. [ECF No. 335, PageID.16149; Jim Schaefer, *Kym Worthy defends waiting years to release innocent Davontae Sanford*, Detroit Free Press (June 9, 2016), https://www.freep.com/story/news/local/michigan/detroit/ 2016/06/09/prosecutor-defends-actions-davontae-sanford-case/85646230/ ("When asked whether Sanford, now 23, is owed an apology by anyone, Worthy demurred. She declined similar questions, citing the ongoing investigation into the killings.")].

The defendants' have been investigating this defense since early in the discovery period (November 2017) by subpoenaing all records from the MSP, as outlined in their Reply brief and response to the plaintiff's motion for sanctions.

[ECF No. 359, PageID.18151; ECF No. 340, PageID.16513-16519]. It is the MSP and Prosecutor's office that controls the shoes and the testing because they are holding them in their on-going investigation, the truth of which cannot be doubted. Defendants pursued their records, they pursued depositions, and lastly, when those remedies were not proving fruitful, they inspected the shoes **during the discovery period**. The plaintiff misrepresented that this occurred "long after discovery had closed." [ECF No. 393, PageID.19837] The inspection occurred in mid-October 2018; discovery closed October 31, 2018. [ECF No. 73, PageID.2165]. The Court is critical of defendants' "cajoling" the MSP into testing after inspecting the shoes despite the MSP being the correct entity to perform the testing given that the shoes are being held as evidence in the on-going criminal investigation. Any finding that this discovery was not sought diligently and timely is plainly wrong.

The Court further erred when it was critical of the defendants' counsel for not disclosing the inspection or any of its communications regarding the testing. Yet, the Court did not identify any rule which would require such disclosures except for pointing to the defendants' failure to supplement a discovery request. The defendants did not have a duty to disclose their inspection of the evidence nor their communications. *Mote v. City of Chelsea*, 391 F. Supp. 3d 720, 737–38 (E.D. Mich. 2019), *appeal dismissed sub nom. Mote v. Washtenaw Cty. Rd. Comm'n*, No. 19-1864, 2019 WL 7834248 (6th Cir. Oct. 10, 2019) (holding that information from site

7

inspection was not required disclosure under Rule 26 because it was trial preparation). But nor did the defendants ever conceal such communications when they became relevant; they were discussed in the Reply brief filed June 24, 2020. [ECF No. 359, PageID.18151-18154].

The defendants brought forth the relevant evidence when it became available to them and how it came about is logical, was never hidden, and should have been anticipated by the plaintiff. This information should not be ignored as it demonstrates that the plaintiff is attempting to obtain a verdict or settlement based on fraud, which is grounds to alter a judgment under Rule 60(b). Fed. R. Civ. P. 60(b)(3). The Court's disdain for the defendants' defense is not sufficient grounds to deny their ability to assert it. The defendants presented good cause to pursue this limited discovery and it was erroneous for the Court to deny it.

Moreover, as the plaintiff's counsel explained, he already had experts available to review the initial DNA tests showing a victim's DNA was on the shoes. The plaintiff's counsel requested, even insisted, that the final report be obtained, although not wanting to pay for the final report. [ECF No. 359-5, PageID.18175-18180]. The defendants then paid for the final report, yet this court criticizes them for doing so, even though the criminal investigation continues to this day and defendants accommodated the plaintiff's counsel's request to obtain the final report.

And now is the time to address the DNA testing that is being performed. If the results show that Mr. Sanford was inside the house, that a victim's DNA is on his shoes, that would justify setting aside any judgment or settlement pursuant to Fed. R. Civ. P. 60(b)(3).

> To summarize, we hold that Rule 60(b)(3) in the Sixth Circuit requires a demonstration by the moving party, supported by clear and convincing evidence, that one or more of the three kinds of misbehavior referred to in the rule occurred.[8] If the moving party can make this demonstration, then the policies behind Rule 60(b)(3) are fully implicated and the district court **must** order a new trial unless the non-moving party can demonstrate by clear and convincing evidence that its misbehavior had no prejudicial effect on the outcome of the litigation.

*Jordan v. Paccar, Inc.*, 97 F.3d 1452 (6th Cir. 1996) (emphasis added). The defendants urge this court not to force any of the parties nor the court to go through the time and expense of a trial if by its conclusion, the DNA results show that Mr. Sanford is committing a fraud upon the court. Instead, defendants request this court to reconsider its decision particularly in light of the on-going testing that just became known. [Exhibit 3, Declaration of T. Joseph Seward].

### B. Plain Factual Errors

Underlying the Court's opinion in ECF No. 393 are multiple palpable factual errors. Some, like the reference to the Defendants' discovery conduct occurring outside of the discovery period, are addressed above. But there are more errors that must be addressed because they formed the basis for the Court's perspective on the

9

defendants' counsel's conduct. These include direct factual contradictions and the alleged omissions and misrepresentations.

First, the Court believes the defendants intentionally omitted the blood test performed by the MSP in December 2018 to mislead the Court because it contradicts their need for DNA testing. The record does not support this conclusion. It is correct that the defendants' *opening* motions did not include this information, but they did address their reasons for not providing it when the plaintiff questioned its omission. [ECF No. 335, PageID.16143-16145; ECF No. 340, PageID.16516-16518]. These reasons were thoroughly discussed twice by defendants and included the unreliability of the test, the type of test (presumptive), and the condition of the shoes (washed leather). Moreover, the DNA test confirmed that regardless of whether the substance is blood or something else, DNA from a person was on the shoes. The MSP is also currently testing only that area of the shoes for DNA at the direction of the Wayne County Prosecutor. [Exhibit 3, Declaration of T. Joseph Seward].

Second, the Court suggested that the defendants were dishonest about the plaintiff's testimony about how blood would be on his shoe. [ECF No. 393, PageID.19831]. This mistake was understandable because the wrong page of testimony was cited and attached; page 202 was provided but the testimony is on page 284. The portrayal of the testimony was accurate though, which is likely why the plaintiff did not dispute it. Below is a screenshot of the testimony:

10

```
 9    BY MR. SEWARD:
10    Q.   Anything else in that ride?
11    A.   A lot.
12    Q.   Okay.  Well, go ahead and tell me.
13    A.   I got scared and I made up the story.  I told him that
14         my dog got loose, got into a fight and got into
15         another like scuffle with a dog and I had to break it
16         up.  That's how the blood got on my shoes.
```

[Exhibit 4, Sanford Deposition Page 284].

Third, the Court is critical of the defendants' failure to supplement discovery requests because they were not in the individuals' possession. [ECF No. 393, PageID.19845]. The Court incorrectly wrote that "[t]he defendants respond that they had no obligation under the Federal Rules of Civil Procedure to disclose documents that were obtained by counsel, which never were in the defendants' personal possession, custody, or control,…" [ECF No. 393, PageID.19845]. This was not the defendants' argument. The defendants' argued that the plaintiff's specific request only asked for information in the individuals' direct possession and control, whereas their request to the City of Detroit (a dismissed party with no duty to supplement) encompassed this information. The request to the individuals is pictured below, followed by that to the City for comparison.

11

> 1.    All documents in Tolbert's or Russell's possession, custody, or control relating to Plaintiff Davontae Sanford, with respect to the investigation and prosecution of the Runyon Street quadruple homicide, including through and beyond the post-conviction proceedings and exonerations.

[ECF No. 340-13, PageID.16605]

> 1.    Any and all documents generated by, and/or in the custody of, the City of Detroit, regarding the Runyon Street quadruple homicide investigation and prosecution of Davontae Sanford — including through and beyond the post-conviction proceedings and exoneration. This request includes but is not limited to:
>    a. The complete investigative DPD file(s) regarding the Runyon Street quadruple homicide, reproduced in their original form;
>    b. The complete Wayne County Prosecutor's Office file(s), including without limitation the initial file(s) relating to the Runyon Street quadruple homicide, and any files relating to the reinvestigation of that crime by the Michigan State Police, each reproduced in its original form;
>    c. The complete forensic investigative file(s), reproduced in their original form;
>    d. Crime reports, investigative reports and supplements, notes, witness statements;
>    e. Memo books, notebooks, and notes from all investigating officers, identified by officer name and shield number;
>    f. Photographs, including true and accurate (color) copies of any photographs of physical evidence or testing procedures;
>    g. Audiotapes and videotapes, including but not limited to audio recording of 911 calls and audio or video recordings of Davontae Sanford;
>    h. Affidavits, warrants, and transcripts, including but not limited to transcripts of any grand jury proceedings;
>    i. Signed waivers;

j. Physical and forensic evidence;

k. Laboratory reports, preliminary reports, and supplements;

l. Any and all documents relating to trace evidence testing or examination, forensic hair examination or testing, serological testing or examination, latent fingerprint examination or testing, and the determination of the time of the victims' deaths;

m. Audit reports, case reviewer reports and notes, and peer review reports and notes;

n. Inventories, vouchers, chain of custody documents, and letters of transmittal;

o. Logs, including but not limited to evidence logs, testing logs, employee hour logs, and any other logs relating to the testing and maintenance of physical evidence;

p. Electronic mail or other data;

q. Interdepartmental memoranda and any other communications between investigative agencies, including but not limited to the DPD, Wayne County Prosecutor's Office, crime lab, and members of the press/media;

r. Medical examinations;

s. News reports;

t. Documents concerning any other suspects, from September 2007, to the present;

u. Any and all documents prepared by any employee, agent, or official of the City of Detroit; and

v. Pretrial detention files.

2. The DPD's complete file or complete set of files of all documents from every investigation in which Davontae Sanford was ever investigated or considered a suspect.

[Exhibit 5, Plaintiff Request to Detroit]. Thus, the defendants only argued that they reasonably interpreted the requests to request different things in light of how differently they were phrased.

Fourth, the Court again is critical of what it believes was a previous misrepresentation. [ECF No. 393, PageID.19842]. The Court believes that the defendants misrepresented the introduction of Russell's statements. But the

13

defendants' never argued that Russell's statements were not made at the preliminary examination; they argued that the allegedly fabricated evidence that he could be held liable for was never introduced. [ECF No. 148, PageID.5934]. Russell cannot be liable for his testimonial statements on the witness stand as stated by the defendants in the same argument:

> Sanford cannot satisfy this element based on testimony that either Russell or Tolbert provided, because they are entitled to absolute immunity for their testimony and any associated preparatory activity. *Briscoe, supra; Rehberg, supra*. Participation and influence must be demonstrated by an officer's actions *prior to and independent of his or her testimony*. *King v. Harwood*, 852 F.3d 568, 586 (6th Cir. 2017). To prevail, a plaintiff must

[ECF No. 148, PageID.5933]. Thus, any alleged "misrepresentation" was merely a misunderstanding of the defendants' argument. There has been no pattern of intentional misrepresentations.

Fifth, the Court's opinion states that it is "unclear" what may have occurred between June 10, 2019, and June 21, 2019, when the defendants withdrew their first motion for DNA testing. [ECF No. 393, PageID.19834]. This statement ignores and fails to mention the very clear explanation the statement of withdrawal provided: that the MSP were performing the testing at the direction of the Wayne County Prosecutor as shown on the next page.

14

> Defendants, Michael Russell and James Tolbert, are withdrawing Defendants' Motion for Limited Discovery and Appointment of DNA Examiner (Dk. 320) *without prejudice* because today they learned from a representative of the Michigan State Police that it, at the direction of the Wayne County Prosecutor's Office, plans to forward the DNA computer data at issue to TrueAllele for further testing and comparison.

[ECF No. 336, PageID.16380]. This statement, while minor in itself, reflects a larger blind-eye that the Court turns toward the unique scenario of the on-going investigation that may, and should, have a significant impact on this case.

Sixth, the Court is critical of the officers' failure to perform testing on the shoes during the underlying criminal investigation when examining the diligence of the defendants. [ECF No. 393, PageID.19843]. Yet, the Court fails to consider that the plaintiff had confessed. There was little need for testing until this lawsuit. By that time, the MSP had already assumed custody of all the evidence and the criminal investigation, thus limiting access to the evidence.

Seventh, the Court is critical of the defendants for referring to the stains on the shoes as blood. Yet, the defendants explained it was not defense counsel who first suggested the stain was blood, but a member of the MSP who first indicated the substance looked like blood. [ECF No. 340, PageID.16515]. The defendants have also explained why they believe there is sufficient evidence to allege that the stain is blood despite the testing that was performed by MSP, i.e., the false negative rate,

15

the condition of the shoes, and the material of the shoes. [ECF No. 335, PageID.16143-16145].

The above summary of the record demonstrates that there were reasonable grounds for the defendants and defense counsels' actions. The defendants, and ultimately the City, should not be punished by being denied use of this evidence. Such a sanction does not fit the conduct. Thus, the defendants respectfully request that the Court reconsider its decision in light of the above.

Respectfully submitted,

**CITY OF DETROIT LAW DEPARTMENT**

 /s/ Charles Raimi
Charles Raimi (P29746)
*Attorneys for Defendants*
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-3089
F: (248) 733-3633
E: raimic@detroitmi.gov

**SEWARD HENDERSON PLLC**

/s/ T. Joseph Seward (P35095)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com

Dated: April 13, 2021

16

**PROOF OF SERVICE**

I hereby certify that on **Tuesday, April 13, 2021**, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification to the following: ***All Parties and Attorneys of Record.***

/s/ Alyssa Schwarcz
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
Dated: April 13, 2021          E: aschwarcz@sewardhenderson.com

17